## KIRBY v. BERGUIN.

1. An objection to testimony on the ground that it contradicts and varies the terms of a written instrument is unavailable where the instrument itself is not in evidence.

**2.** In an action on a note, it appeared that a lightning-rod dealer, acting under an assumed name, procured defendant's signature to an order for rods, representing that they would cost only $20. Subsequently, in defendant's absence, two of the dealer's employes put up the rods; and next day they returned with what they claimed to be defendant's order, and by representing that the order was for $187, and was negotiable, and that they would negotiate it, so that defendant would have to pay the full amount, unless he did as they directed, they procured his signature to a note for $140—the note in suit—which the dealer transferred to plaintiff. *Held*, that the evidence of the circumstances leading up to the execution of the note was admissible to show a fraudulent conspiracy between the lightning-rod dealer and his employes to obtain defendant's signature to the note.

**3.** The evidence was sufficient to sustain a finding of the jury that the note was procured by a fraudulent scheme, beginning with the first solicitation of the order for the lightning rods.

**4.** Where a negotiable instrument is shown to have been obtained by fraud or duress, the burden is on a subsequent holder to show that he was a bona fide purchaser for value, without notice.

**5.** Where a note was executed in compromise of a merchandise order which was obtained by fraud, and which was a part of a fraudulent scheme to secure the note—the maker's signature to the note being obtained by threats of forcing him to pay the full amount of the order—the execution of the note was not a waiver of the right to set up the fraud as a defense against the obligation represented by the note.

**6.** In an action on a negotiable note, it appeared that a lightning-rod dealer, through a conspiracy with two of his employes, obtained a fraudulent order for rods from defendant, and then, pursuant to the same scheme, procured the note sued on in settlement of the order. The note was payable to one of the employes and was transferred by the dealer to plaintiff, who had known the dealer for ten years, and had collected many of his lightning-rod bills. *Held*, sufficient to justify an instruction that if plaintiff had no notice of the fraud relied on by defendant, and "had no reason to suspect it," he was not chargeable with notice thereof.

7. The evidence was sufficient to sustain a finding by the jury that plaintiff was not a bona fide purchaser.

8. At the close of the evidence in a civil action, plaintiff requested the court to put its charge in writing, and sent it out to the jury upon their retirement. The court, however, charged the jury orally, no objection being taken until the charge was finished when plaintiff excepted to the charge not being in writing; and thereupon the court directed the reporter to transcribe the charge into longhand, and to deliver it to the bailiff having the jury in charge, no objection being taken to such direction. The reporter asked plaintiff if he really wished the jury to have the charge in writing, and, on being told "Yes," wrote it out and delivered it to the bailiff. *Held*, that plaintiff being presumed to have heard the court's direction to the reporter and having assented to the reporter's delivering the charge to the bailiff, there was a waiver by plaintiff of objection to the irregularity of the proceedings.

9. In an action by the assignee of a note against the maker, wherein the defense was that the note was procured from defendant by plaintiff's assignor in settlement of an order for lightning rods fraudulently procured by such assignor from defendant, defendant's counsel, in his argument to the jury, stated that he had read in a paper the plaintiff had a large number of houses, but that he did not believe he had any of his assignor's lightning rods on them. *Held*, that the remarks did not transcend the license allowed attorneys in their arguments to the jury.

(Opinion filed March 1, 1902.)

Appeal from circuit court, Minnehaha county. Hon. Joseph W. Jones, Judge.

Action by Joe Kirby against W. G. Berguin upon a promissory note. From a judgment in favor of defendant, plaintiff appeals. Affirmed.

*Joe Kirby,* in pro. per.

*Davis, Lyon & Gates,* for respondent.

Corson, J. This is an action by the plaintiff as an indorsee

of a negotiable promissory note executed by the defendant. The case was tried to a jury, and a verdict returned in favor of the defendant. From the judgment thereon, and an order denying a new trial, the plaintiff has appealed.

The defendant, in paragraph 3 of his answer, alleged that his signature to the note sued on in this action was extorted from him by means of a fraudulent scheme, combination, and conspiracy on the part of William Barker, W. Bencliffe, C. Schott, and William Cross to secure the signature of the defendant to said note for the purpose of disposing of the same to an innocent purchaser, and thereby defraud the defendant out of the amount of said note, and that in pursuance of such fraudulent combination, scheme, and conspiracy, the party calling himself William Cross called at the home of the defendant and solicited from him an order for lightning rods to be placed on defendant's buildings, and which order the said Cross represented to the defendant was for the sum of $20, the amount for which said Cross agreed to furnish said rods to the defendant; that on the following day, while the defendant was absent from home, Bencliffe and Schott, in pursuance of said fraudulent scheme and conspiracy, came to the defendant's premises and erected lightning rods on the same; that on the day following, for the purpose of further carrying out said fraudulent scheme and conspiracy, the said Bencliffe and Schott returned to the home of the defendant, and fraudulently claimed that there was due on the order for said lightning rods $187, and represented to the defendant, falsely and fraudulently, that the order he had given for said rods was negotiable, and threatened the defendant that if he did not settle said claim, and give his note therefor, they would sell and transfer said order to an innocent person, who would sue and collect the full amount of the same, but, in order to settle said claim, they stated

they would accept a note for $140, signed by the defendant; that the said parties by artifice prevented the defendant from reading said order, and the defendant, relying upon said statements as to the contents of the same, and believing them to be true, and by reason of said threats, signed and delivered the note in suit in this action. Defendant further alleges in his answer that the plaintiff became the owner and holder of said note with the knowledge of the deceit, fraud, and conspiracy under which the same was extorted from the defendant.

There are a number of errors assigned, but they may be grouped under three heads: First, errors of the court in the admission of evidence; second, errors of the court in its charge to the jury; third, irregularity in the proceedings of the court and jury, by which plaintiff was prevented from having a fair trial.

On the trial the defendant, called as a witness in his own behalf, testified at considerable length to the conversation between himself and the parties mentioned in the answer, and the representations made by them, resulting in the giving of the note sued on in this action. The evidence so given tended to prove substantially the facts set up in the answer, but somewhat more in detail. This evidence was admitted over the objections of the plaintiff that the same was inadmissible for the reason that the order itself was not in evidence, and also because the same was incompetent, irrelevant, and immaterial. The appellant further contends that this evidence was inadmissible as it tended to vary the terms of a written contract. This contention is untenable, for the reason that the written contract or order given for these lightning rods is not before us, as it was not introduced in evidence by either party, and, for the purpose of proving that the note was obtained from him by fraud, it was competent for the defendant to show all the transactions be-

tween himself and the alleged conspirators, as to the manner of obtaining the note from him. It appears by the evidence of the defendant that the man claiming himself to be Cross came to his home and solicited the privilege of putting lightning rods upon his house and barn, stating that the same would not cost more than about $20, and induced the defendant to sign an order for said rods, representing to him that the amount specified in the order was the same as that above named. It seems quite clear from the evidence that this person giving his name as Cross was in fact William Barker, the man really engaged in the business of putting up lightning rods, and who transferred the note in suit to the plaintiff; that on the day following, Bencliffe and Schott, in the absence of the defendant, put up the rods. On the following day Bencliffe and Schott returned, having in their possession what they represented to be the order, and claimed that there was due thereon the sum of $187, and further represented that the order was negotiable, and, if the defendant refused to pay it, they would transfer it to an innocent holder, and that the defendant would be compelled to pay the full amount, but, as a compromise, they offered to take his note for the $140; and, acting under the belief that the threats made by Bencliffe and Schott would be carried out, he executed the note in controversy, made payable to Schott, as payee. We are of the opinion that the evidence of the defendant was competent, relevant, and material, under the allegations of the answer, and the court committed no error in admitting the same.

It is contended on the part of the plaintiff that as he was a purchaser of the note in controversy before its maturity, for value, he was protected against the defense interposed by the defendant. But this court has held, following what it deems to be the weight of authority, that, where a negotiable instrument is shown to

have been obtained by fraud, the burden of proof is upon the indorsee or holder to prove that he was a purchaser for value before maturity, in good faith, and without notice. Landauer v. Improvement Co., 10 S. D. 205, 72 N. W. 467; Knowlton v. Schultz, 6 N. D. 417, 71 N. W. 550; Vosburgh v. Diefendorf, 119 N. Y. 357, 23 N. E. 801, 16 Am. St. Rep. 836. In the latter case the court of appeals of New York uses the following language: "But in this state it must be regarded now as a settled rule that, when the maker of a negotiable paper shows that it has been obtained from him by fraud or duress, a subsequent transferee must, before entitled to recover on it, show that he is a bona fide purchaser." Unless the plaintiff, therefore, was such a purchaser, he is not protected.

It is further contended on the part of the appellant that, if the original transaction between the defendant and Barker or Cross was tainted with fraud, the transaction was subsequently compromised by the parties, and the note in controversy was given as a result of that compromise, and hence the defendant cannot avail himself of the original fraud. But we cannot agree with the counsel in this contention. In our opinion the jury were fully justified in finding that the procuring of the note was a part of the fraudulent scheme intended by the parties in the inception of the transaction. The note was but the conclusion of the original fraudulent conspiracy. The note was given to C. Schott as payee, and seems to have been indorsed in Schott's name by Bencliffe, and was transferred to the plaintiff by William Barker. The evidence tends to prove that Barker took the order, representing himself as Cross; that Bencliffe and Schott performed the work, and secured the note to be given to Schott as payee, and that Bencliffe signed Schott's name to the note as indorser, with Schott's consent; and

that Barker transferred the same to the plaintiff. The jury were therefore warranted in finding that the acts of each of the parties were acts in furtherance of the alleged conspiracy, and constituted a part of the same. This seems to have been the view of the supreme court of Vermont in the quite analogous case of Ormsbee v. Howe, 54 Vt. 182, 41 Am. Rep. 841. In that case a similar contention was made that there was a settlement of the claim, and that the note was given as a result of such settlement. Threats, however had been made that the order would be sued, and by reason of such threats the note in question was given. In its opinion that learned court says: "This case discloses a scheme to get this wire clothes line onto the people in a fraudulent way. It was first to get an order from a man by the use of all fraud necessary for that purpose, and then, by confronting him with the order, and by threats of suit, to get a settlement. The scheme, as originally concocted, extended through to the obtaining of the note. The order being obtained by fraud, no debt was created. There was nothing to found a settlement upon. * * * The fact that the defendant yields to the demand and threats, and promises to pay, or gives a note with knowledge of the fraud, cannot help the promisee, because the note is but the fruit, the outgrowth, of Preston's original fraudulent conception and act. His soiled hands have not thereby become clean." The appellant has called our attention to the case of Peckham v. Hendren, 76 Ind. 47, in which the supreme court of Indiana seems to have taken a different view, but we are unable to agree with that learned court in its conclusion.

The plaintiff further contends that the court erred in the following portion of its charge to the jury: "If the jury further believe from the evidence that he [the plaintiff] had no notice of the special defense now set up by the defendant, and had no reason to

suspect it, he will not be chargeable with notice of the same." This instruction is clearly correct, as applied to the facts of this case. As we have seen, a party who takes a note procured by fraud from the maker must not only show that he is a purchaser for value before maturity, without notice, but that he purchased it in good faith. If, therefore, there were circumstances connected with the transaction which would arouse the suspicion of an ordinarily prudent man, and he failed to make the investigation suggested by these suspicions, he cannot be said to be a purchaser in good faith. It was shown in the case at bar that the plaintiff had known Barker for about ten years, and collected many of his lightning rod notes, and therefore knew that he was engaged in the lightning rod business; saw upon the face of the note that it was taken in the name of Schott, an employe of Barker, and transferred by him, and yet Barker negotiated the sale to the plaintiff. The jury may well have arrived at the conclusion that there were sufficient suspicious circumstances connected with the transfer of the note to put the plaintiff upon inquiry, and we are of the opinion that the jury were fully justified in finding that he was not a purchaser in good faith. We are also of the opinion that the court was clearly right in instructing the jury, under the evidence in this case, that "the burden of proof upon this question of good faith rests upon the plaintiff", as there was sufficient proof that the note was obtained by fraud to shift the burden of proof upon the plaintiff to show his good faith. We have sufficiently discussed this question in a previous part of this opinion.

As before stated, the motion for a new trial was also made upon the ground of irregularity in the proceedings of the court, in that it omitted to charge the jury in writing, as requested by the plaintiff, and in that, subsequently to the retirement of the jury to delib-

erate upon their verdict, the charge of the jury was written out by the stenographer and delivered to the bailiff, who handed the same to the jury. It appears from the record in this case that at the close of the evidence, and about the time of the beginning of the argument, the plaintiff stated to the court that he desired its charge to the jury to be in writing, and sent out to the jury upon their retirement. The court, however, proceeded to charge the jury orally, no objection being made thereto at the time; but at the conclusion of the charge the plaintiff excepted to the charge, as not having been reduced to writing. Thereupon the court directed the reporter to transcribe the charge correctly in longhand and deliver it to the bailiff having the jury in charge. No objection seems to have been made to this direction of the court. Mr. Higby, the stenographer, says in his affidavit: "I transcribed the charge of the court correctly, and while I was so transcribing the same I saw the plaintiff and asked him if he really wanted a written charge given to the jury, and he said, in substance, that he did", and that the affiant continued his work on the charge, and delivered it to the bailiff as directed by the court. If there were any irregularities in the proceedings they were waived by the plaintiff, who must be presumed to have heard the order of the court directing the stenographer to write out the charge in longhand and deliver it to the bailiff for the jury, and to which plaintiff made no objection. Again, the plaintiff, when asked by the stenographer if he wanted the charge to go to the jury, replied that he did. He cannot be heard now to complain that the proceedings to which he assented were irregular.

It is further contended on the part of the appellant that the proceedings were irregular, in that the counsel for the defendant made remarks to the jury that were prejudicial to the plaintiff; but this contention is untenable. It seems that, in the course of the ar-

gument for the defendant, Mr. D. R. Bailey stated to the jury that he noticed in one of the Sioux Falls papers that the plaintiff had fifty-seven houses; and, some objection being made to this by the plaintiff, he explained·that the plaintiff's wealth had nothing to do with the case; that what he started out to say was, if the plaintiff had that number of houses, or any other number, he did not believe that he had any of Barker's lightning rods upon them; that Barker sold the rods, and Kirby did the collecting. This was evidently said, as were the remarks of Mr. Park Davis, as oral argument to the jury, and did not seem to have transcended the license allowed the attorneys in arguing their case to the jury. Our attention is called to the case of Lindsay v. Pettigrew, 10 S. D. 228, 72 N. W. 574. In that case the counsel stated to the jury what he claimed to be facts in regard to previous trials in the same case, changes of venue, etc. These statements were directly calculated to prejudice the jury against the opposing party, and, as these facts had not been introduced in evidence, this court held that counsel exceeded his privilege, and upon that ground reversed the court below.

There are several other assignments of error, but, as they have not been argued by counsel, we shall assume that they were waived.

Finding no error in the record of the court below, the judgment of the circuit court and the order denying a new trial are affirmed.