## MEE v. CARLSON et al.

Evidence **held** to warrant a finding that notes were fraudulently obtained by the payee or his agent from the possession of one of the makers.

A purchaser of a note, fraudulent in its inception, has the burden of showing that he was a purchaser in good faith for value and without notice, in the regular course of business.

Where, in an action on a note for the price of a horse, it was not shown that the horse was ever delivered to the makers, or that they accepted the same, or that they in any manner received any benefits from its possession by one of them, they were damaged by fraudulent acts of the seller and his agent in putting the note into circulation with knowledge that the same had been fraudulently obtained from the makers; and the fact that the horse was not returned to the payee, and the contract of sale rescinded, was immaterial.

Evidence **held** to show that a purchaser of a note fraudulent in its inception, had actual notice of circumstances sufficient to put a prudent man on inquiry, within Rev. Civ. Code, §§ 2451, 2452, defining constructive notice.

A purchaser of a note, fraudulent in its inception, must, to constitute himself a purchaser in good faith, make inquiries of the payee as to the making and delivery of the note, and he cannot rely alone on the fact that he had no information of any defense to the note, but he must show that he used the means that an ordinarily prudent person would have used to ascertain how the note was obtained.

Evidence **held** to justify a finding that a purchaser of a note, fraudulent in its inception, was not a purchaser in good faith, even though the rule be admitted that, where facts are testified to by a witness, and there is no conflict in the evidence, the jury must take his statements as true.

(Opinion filed, October 16, 1908.)

Appeal from Circuit Court, Union County. Hon. JOSEPH W. JONES, Judge.

Action by James Mee against E. O. Carlson and others. From a judgment for defendants, plaintiff appeals. Affirmed.

*Alan Bogue, Jr.,* and *H. M. Wallace,* for appellant.

Fraud without damage or damage without fraud will not sustain an action for deceit. Taylor v. Guest, 58 N. Y. 262; Nye v. Merriman, 35 Vt. 438; Freeman v. McDaniel, 23 Ga. 354; Bayard v. Holmes, 34 N. J. Law 296; 3 Suth. Dam. 594; Cooly on Torts, 474. To sustain this defense of deceit or fraud the respondents must show, not only that they relied upon the false and fraudulent representations of the original payee of the note and his agents,

but also that they have sustained damage by reason of so doing. Ming v. Woolfolk, 116 U. S. 599; Dawe v. Morris, 149 Mass. 188; Freeman v. Venner, 120 Mass. 424; Ide v. Gray, 11 Vt. 615; Randall v. Hazelton, 12 Allen 412; Fuller v. Hogdon, 25 Me. 243; Alden v. Wright, 47 Minn. 225, 49 N. W. 767. It is necessary to a cause of action for fraud that it cause actual injury; damages is the gist of the action in such cases. In other words, fraud and damage must concur to give a cause of action. First National Bank v. North, 2 S. D. 480; Sioux Banking Co. v. Kendall et al, 6 S. D. 543, 62 N. W. 377; Fraud without injury may be a moral, but not a legal wrong; Bomar v. Roser, 131 Ala. 215, 31 So. 430. That equities and defenses existing in favor of the respondents, if any does exist, against the original payee of the note, cannot be set up as a defense against a bona fide purchaser, owner and holder of a negotiable instrument. Current Law, Vol. 6, page 791; Bailey v. Griswold, 36 N. Y. Super. Ct. (4 Jones & S.) 68; Stone v. Bond, 49 Tenn. 425; W. W. Kimball Co. v. Mellon, 80 Wis. 133; Poorman v. Mills, 39 Cal. 345; Goodman v. Simonds, 61 U. S. 343; Bank v. Dakin, 39 Pac. 180; Smith v. Livingston, 111 Mass. 342; Bank v. Flath, 86 N. W. 867. Where the first indorsee purchased a negotiable instrument before due and pays value, without notice of prior equities, the second indorsee holding under the first, takes a good title, even though he had notice of such prior equities, if he purchased the instrument in the regular course of business before it became due. Prentiss v. Strand, 93 N. W. 816; Current Law, Vol. 2, 1028; County of Scotland v. Hill (U. S.) 33 L. Ed. 261; Cromwell v. Sac County, 96 U. S. 51; Montclair v. Ramsdell, 107 U. S. 147; Potter v. Bessemer Steel Co., 122 U. S. 267; Roberts v. Lane, 64 Me. 108; Century Digest, Vol. 7, Bills and Notes § 938.

*Erickson & Stickney* and *Keith & Keith,* for respondents.

Where a promissory note is obtained by fraud there can be no recovery until the plaintiff shows that he is in possession of it as a bona fide holder. It is held, with very little diversity of opinion, that the plaintiff must show that he acquired the note in good faith. Canajohane National Bank v. Diefendorf, 25 N. E. 402. Gibber-

son v. Jolley, 22 N. E. 306; Ray v. Baker, 74 N. E. 619; Kinney v. Walker, 44 Pac. 501; Skeik v. Neible, 59 N. E. 281.

CORSON, J.  This action was instituted by the plaintiff as second indorsee of a promissory note, alleged to have been executed by the defendants to one Henry Lefebure, for the sum of $800, with interest at the rate of 6 per cent. per annum, payable July 1, 1906, to recover from them the amount due thereon.  Verdict and judgment being in favor of the defendants, the plaintiff has appealed.

The complaint is in the usual form, and after alleging the execution of the note, and giving a copy of the same, the plaintiff alleges: "That after the execution and delivery of the said note and before the maturity thereof, the said Henry Lefebure, the payee mentioned in the said note, for a good and valuable consideration, and in the usual course of business, duly sold, indorsed, and delivered to A. J. Struble the said note; that thereafter and before the maturity of said note, the said A. J. Struble, for a good and valuable consideration, and in the usual course of business, duly sold, indorsed, and delivered to this plaintiff the said note, and said plaintiff is now the legal owner and holder thereof."  The defendants in their answer admit that they signed the promissory note in question, together with two other promissory notes, each in the sum of $800, payable, respectively, July 1, 1905, July 1, 1906, and July 1, 1907, but deny that any of said notes, including the note in suit, were ever delivered to Henry Lefebure, or to any other person for him, and deny upon information and belief that the note in this action was ever indorsed and transferred for value before maturity thereof, either to A. J. Struble or to the plaintiff before named, and deny that said note described in plaintiff's complaint was acquired by said Struble, or by the plaintiff, in the ordinary course of business, and deny that the plaintiff is now the legal holder and owner thereof.  And the defendants allege, in substance, that said notes were never delivered to said Lefebure, but were fraudulently obtained from the defendant Carlson, who hal the possession of the same for these defendants, by one Headley, agent of the said Lefebure, and by him delivered to the said Lefebure without the consent of the said defendants.  At the close of

the evidence the plaintiff moved for the direction of a verdict in his favor and against the defendants upon the grounds: (1) That the evidence in the case shows that A. J. Struble, the first indorsee of the note, was a bona fide holder of the note in good faith and for value, in the usual course of business, without notice of any infirmity or any defense to the said note; (2) that the plaintiff is a bona fide holder and owner of said note, having received the same from said Struble, and having paid a valuable and fair consideration therefore in the usual course of business, and without notice or information of any infirmity or defense to the said note; (3) that the note in suit was given in part payment of the purchase price of a stallion; that the evidence shows that said stallion was delivered to one Bredall, one of the defendants in this action, at about the time the notes were executed to said Lefebure; that th said Bredall has continually kept the said horse on his premises, without any arrangement being made therefor between him and the said Lefebure; that the evidence in the case shows that neither of the defendants had in any way attempted to rescind the said contract and return said stallion to the said Lefebure, for which the note was given; that there is no evidence in the case to show that the defendants in this action have in any way been damaged by the purchase or sale of the said stallion, or by giving the said note in suit. This motion was denied by the trial court, and its ruling excepted to. It is contended by the plaintiff that the court erred in denying the motion for the direction of a verdict on the grounds stated, and this presents the principal question to be considered on this appeal.

Evidence was introduced by the defendants tending to prove that, in the fall of 1903, Henry Lefebure, who was named as the payee in the note, was engaged in the business of importing and selling horses, mostly Belgian stallions; that some time previous to December 15, 1903, he entered into a contract with 24 farmers in Union county to sell to them a Belgian stallion, known as "Bristol," for the sum of $2,400; that on December 15th there was a meeting of a number of the signers of the contract, and three notes were executed by 19 of the persons who had signed the contract; that it was agreed between Lefebure and the parties who signed

the notes that the notes should not be delivered until signed by 24 responsible farmers of said Union county, and that the notes should be left with the defendant Carlson, and should have no validity as notes, nor be delivered to Lefebure, until signed by the 24 persons designated; that one Headley, who was the agent of Lefebure, asked permission of Carlson to make a copy of the names upon the notes, for the purpose of ascertaining how many of the persons who had signed the contract had signed the notes; that he, after looking over the notes, and without the consent or permission of Carlson, placed them in his pocket, refusing to return them to Carlson when requested, and retained the notes, and immediately left Carlson's house with the notes. It is quite clear that the jury was warranted by the evidence in finding that the notes were never delivered to Lefebure or his agent, Headley, and that they were fraudulently obtained from the possession of Carlson. The note in controversy, therefore, being fraudulent in its inception, the burden was upon the plaintiff to show that he was a purchaser in good faith for value, and without notice in the regular course of business. Landauer v. Sioux Falls Imp. Co., 10 S. D. 205, 72 N. W. 467; McGill v. Young, 16 S. D. 360, 92 N. W. 1066; Kirby v. Berguin, 15 S. D. 144, 90 N. W. 856; Bank v. Diefendorf, 123 N. Y. 191, 25 N. E. 402, 10 L. R. A. 676.

Plaintiff introduced evidence tending to prove that, some time before the note in controversy in this action became due, the same was purchased by said Struble of the said Lefebure, and that he paid the said Lefebure therefor the sum of $425 in cash, and a team of driving horses valued at about $350, the note being indorsed by said Lefebure "without recourse"; that subsequently to the delivery of the same to said Struble, but before the maturity of the note, said Struble indorsed the same to the plaintiff in this action, "without recourse," he claiming that he paid the sum of $800 therefor, either in cash or by the canceling certain indebtedness of Struble to him, and that he took the same for himself individually, and not on account of his bank, of which he was president. It is contended by the defendants that both Struble and the plaintiff had notice of sufficient facts to put them upon inquiry, as

prudent men, as to the validity of the said note. This was evidently the view taken by the trial court in denying plaintiff's motion for the direction of a verdict in his favor, and the view evidently taken by the jury in finding a verdict in favor of the defendants. Upon a careful examination of the evidence we are inclined to take the view that the court was right in denying plaintiff's motion, and that there was evidence from which the jury might reasonably draw the inference that neither Struble nor the plaintiff were purchasers in good faith, and without notice of the existence of any defense to the notes, but had knowledge of such facts as would have put prudent men upon inquiry as to whether or not there was any defense on the part of the makers to the note. The fact that Lefebure indorsed the note "without recourse" was a circumstance calculated to arouse suspicion in the mind of a prudent person, and the further facts disclosed by the evidence that Lefebure resided out of the state, that there were a number of banks in his vicinity, and in the vicinity of the defendants, and that he was comparatively a stranger in Centerville, were calculated to create doubts in the minds of ordinarily prudent persons as to the validity of this note. Mr. Struble and the plaintiff were witnesses on the trial, and the jury had full opportunity to observe their demeanor, manner of testifying, and were the proper judges of the weight to be given their testimony. The fact that no inquiries were made by either Struble or plaintiff, and the manner in which they answered the questions propounded to them by the attorneys for the defendants, was not calculated to favorably impress a court or jury as to their good faith in taking the note. We have not deemd it necessary to reproduce the evidence on the part of the plaintiff, as no useful purpose would be served by the reproduction of the same in this opinion.

The law applicable to this case is thus stated in Kirby v. Berguin, supra, as follows: "As we have seen, a party who takes a note procured by fraud from the maker must not only show that he is a purchaser for value before maturity, without notice, but that he purchased it in good faith. If, therefore, there were circumstances connected with the transaction which would arouse the suspicion of an ordinarily prudent man, and he failed to make the

investigation suggested by these suspicions, he cannot be said to be a purchaser in good faith."

The case of Bank v. Diefendorf, supra, is very analogous to the case at bar; and, in view of the fact that the motion for the direction of a verdict was denied by the trial court, and verdict rendered in favor of the defendant, and the decision of the trial court reversed by the general term, and the recision of the latter court reversed by the Court of Appeals, and that the opinion of the Court of Appeals was the unanimous opinion of the court, we have deemed it proper to quote quite largely from the same. The court, after quite fully stating the facts in the case and the evidence, says: "At the close of the evidence the plaintiff requested the court to direct a verdict for it upon the ground 'that upon the undisputed evidence in the case plaintiff purchased the notes before maturity, paid value therefor, and without notice of any facts constituting a defense to the notes.' This request was denied, and the plaintiff excepted. The trial court submitted the case to the jury under instruction that, if they found the notes were procured from Diefendorf by fraud, and under such circumstances as would not entitle the payee thereof to recover against him, they should consider the further question whether the plaintiff purchased said notes for value, and in good faith, and if it did not, that the defendant was entitled to a verdict. The jury found for the defendant. Upon appeal the judgment entered on this verdict was reversed upon questions of law, and a new trial ordered. The ground upon which this result was reached was said to be that there was no evidence of bad faith in the purchase of the notes on the part of the plaintiff, and that the trial court errer in not directing a verdict for the plaintiff. The plaintiff claims that the proof showing it purchased the notes before maturity, paying value therefor, conclusively establishes its character as a bona fide holder, and entitles it to recover, in the absence of proof showing that it had notice, or knowledge of facts constituting a defense to the action. The plaintiff's contention eliminates the element of good faith from the transaction, and assumes that the language, 'a holder for value,' as used in the authorities, is satisfied by proof that the notes were purchased before maturity, and value paid therefor. We think this

contention is contrary to the weight of authority in this state, even if it is not wholly unsupported by it. The payment of value for negotiable paper is a circumstance to be taken into account with other facts in determining the question of the bona fides of the transaction, and, when full value is paid, is entitled to great weight; but that fact is never conclusive, except in the absence of evidence tending to show notice or bad faith. Those who seek to secure the advantages which the commercial law confers upon the holders of bank bills and negotiable paper must bring themselves within the conditions which that law prescribed to establish the character of a bona fide holder. They are entitled to the benefits of that rule only when they have purchased such paper in good faith, in the usual course of business, before maturity, for full value, and without notice of any facts affecting the validity of the paper. This has been the law in this state since the case of Bay v. Coddington, 5 Johns. Ch. (N. Y.) 54; Coddington v. Bay, 20 Johns. (N. Y.) 637. The fact that they took the paper before maturity, and paid the full value thereof, in the absence of other facts, undoubtedly affords a presumption of the good faith of the transaction; but, where it further appears that such property has been fraudulently or illegally obtained from its owner or maker, and under such circumstances that the person putting it in circulation could not maintain an action thereon, it is incumbent upon the holder in order to succeed, to go further and show the circumstances under which it came into his possession, and that he has acted in good faith in the transaction." That court, after a very exhaustive review of the cases decided in that state, concludes as follows: "A sufficient number of authorities have been cited to show the uniformity with which the cases, in the highest courts of the state, hold that, upon proof by the defendant that his obligations have been fraudulently or illegally obtained and put in circulation, the person seeking to recover upon them must show, not only that he bought before maturity and paid value, but also the circumstances under which he acquired the paper, with the view of enabling the jury to determine whether he acted in good faith or not. It makes no difference in the question presented whether the plaintiff pursues the orderly course of first presenting and proving his note, relying upon the

presumption of bona fides which accompanies the possession of the paper, and delays making proof of the circumstances of his purchase until after the defendant gives evidence of his defense, or, as in this case, he makes the proof of such circumstances a part of his affirmative case. The burden of making out good faith is always upon the party asserting his title as a bona fide holder, in a case where proof shows that the paper has been fraudulently, feloniously, or illegally obtained from its maker or owner. Such a party makes out his title by presumptions, until it is impeached by evidence showing the paper had a fraudulent inception; and, when this is done, the plaintiff can no longer rest upon the presumptions, but must show affirmatively his good faith." Giberson v. Jolley, 120 Ind. 301, 22 N. E. 306; Ray v. Baker, 165 Ind. 74, 74 N. E. 619; Kenny v. Walker, 29 Or. 41, 44 Pac. 501.

The contention of the plaintiff that the contract as to the stallion was never rescinded and the same returned to Lefebure is not, in our view of the case, material, as it was not shown that the horse was ever delivered to the defendants, or that they ever accepted the same, or that they have in any manner received any benefits from its possession by Bredall. As the company was never organized, and the horse never accepted, the defendants were clearly injured and damaged by the fraudulent acts of Headley as the agent of Lefebure and by the acts of Lefebure in putting the note into cirlation, knowing that the same was fraudulently obtained from the defendants.

The contention of the plaintiff that, as the testimony of Mr. Struble was not contradicted, and his reputation for truth and veracity was not impeached, his testimony must be taken as true by the jury is not tenable, for the reason that, while his testimony was not directly contradicted, and no witness was called to testify as to his character for truth and veracity, he was impeached by his cross-examination, which is one of the methods by which the testimony of a witness may be impeached. He admits on his cross-examination that, notwithstanding the existence of facts calculated to arouse the suspicion of an ordinarily prudent man as to the validity of the note in the hands of Lefebure, he made no inquiries of Lefebure, or any other person, as to the nature of the

transaction resulting in the giving of the note, or as to the delivery of the same by the makers for the defendant. He said, "I did not think it strange that Lefebure indorsed that note 'without recourse.' Everybody indorses a note 'without recourse' when he sells it, if they know how to do business." The answer of Mr. Struble to the question propounded to him is somewhat remarkable, and would indicate that he did not have a very clear idea as to the effect of the failure of Lefebure to indorse the note in the usual manner; Lefebure being a comparative stranger to him residing in another state, and the defendants being residents of a county other than the one in which the alleged sale occurred. The purchase, he claimed, was made in May or June, 1904. It is true that he says in the preceding January he had a conversation with Headley in regard to the note, and that Headley told him it was all right, but it nowhere appears from his testimony that he made any inquiry of Headley or Lefebure as to any of the circumstances attending the giving of the note, and he seems to have studiously avoided making any inquiries of them in relation thereto.

Section 2451 of our Revised Civil Code provides that, "Constructive notice is notice imputed by the law to a person not having actual notice." Section 2452 provides: "Every person who has actual notice of circumstances sufficient to put a prudent man upon inquiry as to a particular fact, and who omits to make such inquiry with reasonable diligence, is deemed to have constructive notice of the fact itself." As before stated, we are of the opinion that Struble had actual notice of circumstances sufficient to put a prudent man upon inquiry, and hence he must be deemed to have had constructive notice of all the facts which such inquiries would have elicited. As a purchaser of the note therefore, in order to constitute him a purchaser in good faith, he should have made such inquiries of Lefebure in regard to the making and delivery of the note, as would, if they had been truly answered by Lefebure, placed him in possession of facts showing that the note in the hands of Lefebure was invalid and worthless, for we have a right to presume that Lefebure would have answered the inquiries made of him truly, as, if untrue, his answers might have subjected him to a prosecution for obtaining money from Struble un-

der false pretenses. The purchaser of a negotiable note, as we have seen, cannot rely alone upon the fact that he has no information of any defense to the same in order to constitute him a purchaser in good faith, but he must go further, and show that he used the means that an ordinarily prudent man would use to ascertain the manner in which the note was obtained from the makers. He is not permitted to refrain from making inquiries, but the burden is upon him to show that he has used the ordinary means to ascertain whether or not the note is a valid note in the hands of the vendor.

It was stated in the opinion in the case of Bank v. Diefendorf, supra, from which we have quoted: "The notes were apparently for unusual amounts for a farmer, in ordinary circumstances, to give, and would naturally have excited curiosity in those who knew him as to the circumstances under which such an indebtedness was incurred. The plaintiff's cashier, however, studiously refrained from acquiring any information in regard thereto, even such as might be, under many circumstances, desirable for the bank to have. He made no inquiry as to the consideration of these large notes, the influences which had taken this farmer so far from home, nor the circumstances attending their execution. He asked no questions as to the responsibility, employment, or associations of his vendor. *.* * Greater caution in avoiding the most natural information could not have been exhibited by the plaintiff if the cashier had known the notes were obtained by fraud or crime, and desired to remain in ignorance of those facts. His conduct indicated something more than negligence. He exhibited a studous desire to avoid any information which might throw light upon the origin of the notes, or the existence of equities in favor of their makers." This language is equally applicable as to Struble and the plaintiff.

It is quite clear from the facts as disclosed by the evidence in this case that Struble was not a purchaser in good faith, and entitled to the protection which the law gives to a good faith purchaser. The plaintiff is clearly in no better position than Struble. He took the note indorsed by Struble "without recourse," and the only inquiries he claims to have made was of Struble, who said to him the note was all right. He admits that he would not have

taken the note for his bank without the indorsement of Struble in the usual manner. Though he claims to have paid value for the note to Struble, he is unable, although purchasing some time before the trial, to state in what manner he paid Struble for it, whether in money or by cancellation of indebtedness due him from Struble. He admits that he gave no check to Struble for the note, but is unable to otherwise to explain the consideration paid by him, and says in his testimony that Struble made a good discount on the note, and when asked the uestion: "Q. Would your bank have taken that note with an indorsement from the payee of the note when it was made to the order of the payee 'without recourse'?" His answer was: "No, sir. Q. And you were willing to take a chance that the bank would not have taken on this note? A. Yes. Q. You knew there was a chance in taking it? A. There was a good rate of interest; there was a good discount." The good faith of the parties in the purchase of the note being in issue, the jury might properly draw the inference from the evidence that neither of these parties purchased the note in good faith, even if the rule, contended for by counsel, should be adopted by this court that, where facts are testified to by a witness, and there is no conflict in the evidence, the jury is bound to take this statement as true, although they might believe, from his manner of testifying and his appearance as a witness upon the stand, that he has testified untruly, a point we do not decide.

The further contention of the plaintiff that, if denied his right to recover in this action, it would be introducing a dangerous rule into the law in regard to the transfer of negotiable papers is not tenable. A person purchasing a note in good faith, who has exercised in its purchase such care as an ordinarily prudent man would exercise, will not be liable to suffer loss by the enforcement of the rule adopted by the Court of Appeals of New York and approved by this court, but, however, if he fails to show that he purchased the note in good faith, by failing to observe the ordinary rules applicable to the purchase of commercial paper, where the circumstances attending the purchase are calculated to excite suspicion in the mind of an ordinarily prudent man, the law will not protect

him, and his loss will be the result of his omission to exercise good faith in the purchase of the paper.

Finding no error in the record, the judgment of the court below and order denying a new trial are affirmed.

FULLER, J., taking no part in this decision.