No. 13,922.

## GIBERSON *v.* JOLLEY.

PROMISSORY NOTE.—*Fraud.*—Where one is induced to sign a promissory note by a cunningly devised scheme, preconcerted for the purpose of deceiving him, and made effective by false statements, a conclusion of fraud is warranted.

SAME.—*Bona Fide Holder.*—*Notice of Fraud.*—*Burden of Proof.*—In an action by an endorsee upon a promissory note which was obtained from the maker by fraud, the burden is upon the plaintiff to show that he is a *bona fide* holder of the note, which includes proof that he acquired it without notice of the fraud.

From the St. Joseph Circuit Court.

*A. Anderson,* for appellant.

*L. Hubbard,* for appellee.

ELLIOTT, C. J.—The evidence in this case warranted the jury in concluding that the promissory note on which the appellant's complaint is founded was obtained by fraud. The appellee was induced to sign the note by a cunningly devised scheme, preconcerted for the purpose of deceiving him, and made effective by false statements. The appellant is in error in assuming that all that the payee of the note did was to misrepresent the value and qualities of the so-called Bohemian oats which he induced the appellee to buy. Artifices were resorted to, and these were made means of deception.

The only question in the case which requires serious consideration or discussion is, was the appellant the *bona fide* holder of the note?

Where a promissory note is obtained by fraud there can be no recovery unless the plaintiff shows that he is in possession of it as a *bona fide* holder. It is held, with very little diversity of opinion, that the plaintiff must show that he acquired the note in good faith, although there is some diversity of opinion upon the question of what constitutes a

*bona fide* holder. In some of the cases it is held that he must show that he acquired the note for value, before maturity and without notice. In the case of *Baldwin* v. *Fagan,* 83 Ind. 447, it was said, in speaking of the evidence required of the plaintiffs that, "In other words, the burden was cast upon them of showing that they purchased and paid value for the note before it was due, without notice of the fraud by which it was procured." In *Zook* v. *Simonson,* 72 Ind. 83, the jury were instructed that, upon proof of fraud, "the burden of proof would rest on the plaintiffs to show that they took the note in ignorance of these matters. The plaintiffs having offered no evidence on that point, it will be the duty of the jury to consider only whether there has been shown a failure of consideration," and, after a very full discussion of the question, this instruction was held to state the law correctly. The cases to which we have referred have been followed in later decisions. *Mitchell* v. *Tomlinson,* 91 Ind. 167; *Eichelberger* v. *Old Nat'l Bank,* 103 Ind. 401. In stating the rule which governs in such cases as this, the court said, in *Coffing* v. *Hardy,* 86 Ind. 369, that "Under this law, the endorsee, before maturity, in good faith and without notice, of such a note as the one in suit, takes the same, as against the maker thereof, freed from all the equities which may have existed between such maker and the payee of the note." The question came up in *Scotten* v. *Randolph,* 96 Ind. 581, and it was said, in speaking of an averment of the complaint, that "It can not be said, we think, that the averment of 'good faith' is equivalent to the averment that the endorsee took the note without notice of the maker's defences." In *Baldwin* v. *Barrows,* 86 Ind. 351, the element that the endorsee received the note without notice is treated as essential to constitute him a *bona fide* holder as against a maker who has been induced to execute the note by the fraud of the payee. We have shown by these authorities that the rule has been long enforced in this State and in many instances, and we ought not to depart from our former decisions except for the

weightiest and most satisfactory reasons, and these we have not discovered. Our decisions are supported upon the point under discussion by those of other courts, and are well grounded in principle. In *Smith* v. *Popular Loan, etc., Ass'n,* 93 Pa. St. 19, it was said: " Where a negotiable note was obtained from the maker under false pretences, and fraudulently put in circulation by the payee, the holder of the note, in order to recover, must show a purchase for value before maturity, without notice of the fraud." It was said by the court, in *Tilden* v. *Barnard,* 43 Mich. 376, that " A transfer of the note before due for a valuable consideration is not sufficient." Another court holds that " The fact of fraud being established will throw upon the plaintiff the burden of proof, to show that he came by the possession of the note fairly and without any knowledge of the fraud." *Munroe* v. *Cooper,* 5 Pick. 412.

It would be a departure from principle to hold that the maker must prove that the holder had notice of the fraud. Whether he had notice or not is a matter peculiarly within his own knowledge. It needs no more than a bare statement of the proposition that the plaintiff's possession or non-possession of notice is a matter peculiarly within his own knowledge, to establish it to the satisfaction of a candid mind, and, if this proposition be established, then, it must follow that the proof should come from him, for few rules of law are better settled than that a party whose cause of action or defence rests upon facts peculiarly within his own knowledge, must prove those facts. This rule prevails even in prosecutions for crime. *Shearer* v. *State,* 7 Blackf. 99 ; *Goodwin* v. *Smith,* 72 Ind. 113. Nor is there any hardship in requiring the plaintiff to prove the circumstances under which he acquired the note, for none can know them so well as he, and no other person can so well know where to search for the facts. To impose the duty upon the defendant of showing the circumstances under which the plaintiff obtained the note, and of proving what he knew, would, in many cases,

demand of the defendant an impossible thing, and in all cases it would impose upon him a hardship and a burden from which justice requires he should be free.

It is not easy to conceive how one can be a *bona fide* holder of a note if he had notice of the fraud, and all the courts agree that the plaintiff who sues upon a note must, when evidence that it was obtained from the maker by fraud is given, prove that he is a *bona fide* holder. It would seem clear, therefore, that, to be consistent, they should hold that he must prove, not one, but all of the essential elements of the character of a *bona fide* holder. This can not be done without showing that the note was acquired by the plaintiff without notice, since, if not so acquired, it is not possible for him to be a *bona fide* holder within the meaning of the law.

In support of his adoption of the rule which relieves the plaintiff of the burden of proving that he did not have notice, Mr. Daniel gives this reason: "To require the plaintiff to show absolutely that he had no knowledge of facts would be to burden him with the necessity of proving an impossible negative." 1 Daniel Negotiable Inst. (3d ed.), section 819. The learned and usually very accurate author has fallen into more errors than one in this brief statement. The courts which hold that the burden is on the plaintiff to show that he is, in all the term implies, a *bona fide* holder, have never so much as hinted that absolute evidence is required. In no civil case is so high a degree of evidence demanded. It is, therefore, a mistake to assume that such evidence is meant by the cases which declare that the plaintiff must show that he is a good-faith holder of the bill or note. Nor do these cases require the proof of "an impossible negative," as the author assumes. The negative required is far from being an impossible one; on the contrary, it is not only possible, but easy for the plaintiff to prove the facts within his own knowledge, since if he knows that he bought the note he can not very well be ignorant of the facts attending its acquisition. Nor is it unusual to require a plaintiff to prove a negative;

it is, indeed, always required of him where the facts are peculiarly within his own knowledge and essential to his right of recovery. " Whenever," says Mr. Wharton, " whether in a plea, replication, rejoinder, or surrejoinder, an issue of fact is reached, then, whether the party claiming the judgment of the court asserts an affirmative or a negative proposition, he must make good his assertion." 1 Wharton Ev., section 354. In *Goodwin* v. *Smith, supra,* this question received full consideration, and a great number of authorities were cited in proof of the proposition that the general rule is that negative propositions must be proved, and these cases, as well as those collected by Mr. Wharton, conclusively show that the rule is a common, and not an extraordinary one, and is, indeed, one of almost universal application.

In holding a party who assumes that he is the *bona fide* holder of a promissory note bound to prove all the facts essential to invest him with that character, no more is done than to apply to the particular instance a familiar general rule of wide sweep.

We find nothing in the record which would justify us in overthrowing the finding of the jury upon the question of the appellant's knowledge of the existence of facts constituting a defence to the note.

Judgment affirmed.

Filed Oct. 12, 1889.