## HALSTEAD ET AL. *v.* WOODS.

[No. 6,984.    Filed June 22, 1911.]

1. TRIAL.—*Interrogatories to Jury.—Submission of, by Court.*—Under §572 Burns 1908, Acts 1897 p. 128, providing that in all actions tried by a jury, "when requested by either party, the court shall instruct them * * * to find specially upon particular questions of fact to be stated to them in writing in the form of interrogatories on any or all the issues in the cause," it is not error for the judge to submit, on his own motion, an interrogatory concerning a fact within the issues. p. 129.

2. BILLS AND NOTES.—*Defenses.—Duty of Court to Instruct as to Law.*—In an action upon a note, it is the duty of the court to

instruct the jury as to the law concerning the defenses offered, and as to whether the note as it appears upon its face is governed by the law merchant. p. 131.

3. BILLS AND NOTES.—*Negotiability as Inland Bill.—How Determined.*—Whether a note is governed by the law merchant must be determined from the facts appearing upon the face thereof, unaided by intrinsic evidence. p. 132.

4. BILLS AND NOTES.—*Negotiability.—Essentials.*—A note is not negotiable as an inland bill of exchange unless, upon its face, there is an unconditional promise to pay a certain sum of money, at a fixed time, in a bank of this State. p. 132.

5. BILLS AND NOTES.—*Negotiability.—Payable "at" Bank.—Presumptions.*—A note dated at "Mount Ayr, Indiana," containing an unconditional promise to pay, at a certain time, a certain sum of money to the payee "at the bank of Mount Ayr," is governed by the law merchant, the presumption being that such bank is located at "Mount Ayr, Indiana," where the note was executed, the word "at" being used in the sense of "in." p. 132.

6. BILLS AND NOTES.—*Place of Payment.—Instructions.—Assuming Facts.*—An instruction that the note in suit was payable at a bank in this State is correct, where the note was executed at "Mount Ayr, Indiana," and made payable "at the bank of Mount Ayr." p. 134.

7. BILLS AND NOTES.—*Defenses.—Peremptory Instruction for Plaintiff.*—In an action on a negotiable note, an instruction that the plaintiff was entitled to recover unless the note was materially altered after its execution, is correct, where the plaintiff had testified to facts showing himself to be an innocent purchaser of such note for value, before maturity, and without notice of any defenses thereto, there being no testimony in conflict therewith. p. 134.

From Newton Circuit Court; *Charles W. Hanley*, Judge.

Action by William S. Woods against Everett Halstead and others. From a judgment for plaintiff, defendants appeal. *Affirmed.*

*William Darroch, Foltz & Spitler* and *George A. Williams,* for appellants.

*Hume L. Sammons* and *E. B. Sellers,* for appellee.

MYERS, J.—In the court below, appellee, as indorsee, brought this action against appellants to enforce payment of a promissory note for $1,200, dated at Mount Ayr, Indiana,

March 29, 1904, payable on September 1, 1907, to McLaughlin Brothers, at the Bank of Mount Ayr.

This cause was submitted to a jury for trial upon the complaint, alleging, among other facts, "that the plaintiff holds said note in good faith; that he obtained it before maturity, paid a valuable consideration therefor, and at the time he so paid said consideration and took said assignment he had no notice of any defense thereto on the part of the makers of said note." There was an answer in five paragraphs: (1) A general denial; (2) material alteration of the note sued on after its execution; (3) breach of a written warranty of a certain horse for which the note in suit was given; (4) *non est factum;* (5) failure of consideration. There was a reply in general denial. The jury returned a general verdict in favor of appellee, together with its answer to an interrogatory submitted by the court on its own motion. Judgment was rendered in favor of appellee on the verdict.

Appellants' motion for a new trial was overruled, and this ruling is the only error presented for our consideration. Appellants, in support of this motion, first insist that the court erred in submitting to the jury, over their objection, the following interrogatory: "Did B. B. Miller sign his name to the note in suit on March 29, 1904, at Mount Ayr, Indiana?"

It is claimed that under the act of 1897 (Acts 1897 p. 128, §572 Burns 1908) the court under no circumstances is authorized to submit interrogatories to the jury

1. unless requested so to do by at least one of the parties to the action. Said act repealed §546 R. S. 1881, which provided for special and general verdicts. By the repealed section the court in all cases, when requested by either party, was required to instruct the jury, if it rendered a general verdict, to find specially upon particular questions of fact to be stated in writing. Under this pro-

vision, on the theory of judicial discretion subject to review, it was held not to be error for the court, on its own motion, to prepare and propound to the jury proper interrogatories to be returned with the general verdict. *Senhenn* v. *City of Evansville* (1895), 140 Ind. 675. That provision in the old statute thus construed was substantially reënacted in 1897, and under a well-settled rule of construction it will be presumed that the legislature, by reënacting that part of the repealed statute, adopted the construction placed upon it by the courts, unless the contrary is clearly shown by the language of the act. *Board, etc.,* v. *Conner* (1900), 155 Ind. 484; *Brown* v. *Miller* (1904), 162 Ind. 684. There is no language in the act of 1897, *supra,* from which it can be said that the legislature intended that the trial court should not, on its own motion, submit proper interrogatories to the jury for answer, to be returned with their general verdict. In this case the interrogatory called for a finding of fact within the issues, and the court did not commit error in submitting it.

Appellants also insist that the court erred in giving to the jury certain instructions. Our attention is first called to instructions four and five, given by the court on its own motion. It is argued that instruction four is predicated on §9071 Burns 1908, §5501 R. S. 1881, which makes all written promises negotiable by indorsement, and that instruction five is based on §9076 Burns 1908, §5506 R. S. 1881, and is erroneous, for the reason that no evidence was introduced showing that the note in question was payable in a bank in this State. It is true that the note in suit, although negotiable by indorsement, would not be free from defenses in the hands of appellee under §9071, *supra.* The right of plaintiff to recover under instruction four was not made to depend upon the fact alone that the note was negotiable by indorsement. The jury was told that if it found from all the evidence that the plaintiff was the owner of the note described in the complaint, that he took it before maturity,

in the usual course of business, without notice of facts that impeached its validity between the original parties to the note, or such facts as should have put him on inquiry, then he held the note by a good title, free from all defenses that might have been made by defendants if it had been sued on by McLaughlin Brothers, "and unless there are circumstances which excite suspicion, the purchaser is not bound to make inquiry at the time of the purchase." Instruction five is practically the same as instruction four, except that it told the jury that a promissory note payable in a bank in this State is governed by the law merchant, and that if it found certain facts—practically repeating those mentioned in instruction four—the plaintiff would be entitled to recover, "even though as between defendants and McLaughlin Brothers there existed equities in favor of defendants, unless said note had been materially altered since it was executed."

There was evidence before the jury tending to show that B. B. Miller signed the note as a maker, and that after its execution Miller's name had been removed therefrom. No other alteration is claimed. There was also evidence tending to support the alleged breach of warranty of the horse, and that the consideration for the note had failed. The note itself was introduced in evidence. It had no visible erasure marks, nor was it interlined. It was the duty of the court to apply the law to the note as it appeared upon its face, and to instruct the jury regarding the defenses urged against it. It was for the court to say whether the note upon its face was governed by the law merchant. *Nipp* v. *Diskey* (1881), 81 Ind. 214, 42 Am. Rep. 124; *Louthain* v. *Miller* (1882), 85 Ind. 161. It was in the hands of an indorsee, and as no infirmity appears upon its face, its possession and production raise the presumption that it came into the hands of the holder "in the usual course of business, for value, without notice of any defect in the consideration." *Sondheim* v. *Gilbert* (1889),

117 Ind. 71, 5 L. R. A. 432, 10 Am. St. 23; *Citizens Bank* v. *Leonhart* (1890), 126 Ind. 206; *Fisher* v. *Fisher* (1888), 113 Ind. 474; *Tescher* v. *Merea* (1889), 118 Ind. 586.

As the correctness of instructions four and five, and most of the others to which objection is made, depends upon whether the note in suit was negotiable as an inland

3. bill of exchange, it is necessary that we pass upon that question. It is the theory of appellants that it was not, and in support of their contention they insist that as it was payable "at the Bank of Mount Ayr" instead of "in the Bank of Mount Ayr," and it not appearing that the bank named was in Indiana, as required by statute (§9076, *supra*), therefore its place of payment was uncertain. It must be conceded that certainty is required by the law merchant, and uncertainty in any of the essential elements of a note to bring it within that law will destroy its negotiability as an inland bill. Whether the note in question should be given the dignity claimed for it must be determined from the facts appearing upon its face, unaided by extraneous evidence. *Crossan* v. *May* (1879), 68 Ind. 242, 245.

A promissory note is not negotiable as an inland bill of exchange, unless upon its face it shows that it is an unconditional promise to pay a certain sum of

4. money at a fixed time in a bank of this State. *Gilpin* v. *People's Bank* (1909), 45 Ind. App. 52. The note in suit, upon its face, is dated at Mount Ayr, Indiana, March 29, 1904, and is an unconditional promise to

5. pay $1,200, September 1, 1907, "at the bank of Mount Ayr." While the state in which the note is payable is not named in connection with the name of the bank, yet from the fact that it was executed at Mount Ayr, Indiana, and payable "at the bank of Mount Ayr," the conclusion would naturally follow that the bank named was in the town named, in Indiana. In the case of *Walker* v. *Woollen* (1876), 54 Ind. 164, 166, 23 Am. Rep. 639, it was

said: "A contract, when sued upon in the courts of this State, will be presumed to have been executed in this State, unless the contrary appear." In the case of *Crossan* v. *May, supra,* referring to the case last cited, it is said: "It was held that where a note was made payable at a named bank, in a place named, but without naming the state, it would be presumed that the bank was in the state, rather than out of it, and that the paper was governed by the law merchant." See, also, *Indianapolis Piano Mfg. Co.* v. *Caven* (1876), 53 Ind. 258. Ordinarily the word "at" is less definite than the word "in," but as used in the note before us there can be no doubt of, or lack of certainty in, its meaning. It is commonly employed before the name of a bank or place where the holder of a note may find its maker on the day it becomes due. Its sense is determined largely from the subject-matter with reference to which it is used. It may mean "in," and is commonly so understood when it precedes the name of a bank in fixing the place of payment of a promissory note. The note in question was payable "at the bank of Mount Ayr," and no person of common understanding would think of presenting it for payment at any other place than in the room where such bank was actually carrying on its business. The note in this particular meets all the requirements of the law merchant.

In the case of *Crossan* v. *May, supra,* at page 245, it was said: "In order to place a note upon the footing of bills of exchange, it should show on its face that it is payable *at* or *in a bank.*" (Our italics.) See, also, *Indianapolis Piano Mfg. Co.* v. *Caven, supra.* As to the question under consideration, this case is distinguishable from the case of *Hardy* v. *Brier* (1883), 91 Ind. 91, where the note was made payable "at the bank at Attica, Indiana," and the case of *Butterfield* v. *Davenport* (1882), 84 Ind. 590, where the note was dated "Concord, June the 5th, 1878," and "payable at the Bank of Goshen," and the case of *Rominger* v. *Keyes* (1881), 73 Ind. 375, where the note was dated

"Hope, Ind.," and payable "at the Indiana Banking Company of Indianapolis, Indiana." In the last case it was held that the note was not governed by the law merchant, because not payable at the office or bank of the Indiana Banking Company.

Appellants insist that instructions one to eight, inclusive, tendered by appellee and given by the court, were erroneous and harmful. As to the first, our attention is called to the part that told the jury that "this note is payable in a bank in this State." We find no objection to this statement, as no claim is made that the body of the note had been changed in any particular after its execution. The statement was in keeping with the face of the note, and it was not error for the court thus to construe it.

Instruction two is claimed to be erroneous, for the reason that it assumes that plaintiff had·made out his case, and was entitled to recover, unless the jury should find that the note had been materially altered after its execution, by the removal therefrom of the name of B. B. Miller. As we have seen, there was evidence tending to support other defenses than the one named in this instruction, all of which would have been available to appellants had the suit been prosecuted by McLaughlin Brothers. But as between appellants and appellee, the latter, by reason of the character of the paper in question, holds· it free from such defenses, only in case he took the note before maturity, in the usual course of business, for a valuable consideration, without notice of facts affecting its validity, or of a defense on the part of the makers. *Bradley, Holton & Co.* v. *Whicker* (1899), 23 Ind. App. 380. These were all essential elements, and all must be proved before it can be said that appellee was a *bona fide* holder, and entitled to the protection of the law as an innocent holder. *Giberson* v. *Jolley* (1889), 120 Ind. 301. Appellee's testimony authorized a finding that he was a *bona fide* holder. He was

the only witness who testified on that subject. His testimony was clear and without conflicting statements. He was not contradicted by any other evidence. No facts or circumstances appear in evidence from which the jury might have inferred that appellee was not an innocent purchaser and holder of the note. The testimony of appellee was before the jury only in the form of a deposition, and while the weight of the evidence thus adduced must be left to the jury (*Works* v. *Stevens* [1881], 76 Ind. 181), there was nothing in it to which our attention has been called, tending to discredit it, or from which the jury might draw reasonable inferences calculated to raise a doubt in the minds of reasonable men as to its truthfulness, other than the fact that he was an interested party. From this state of the record it was not improper for the court to tell the jury the legal effect of facts thus established. *Carver* v. *Carver* (1884), 97 Ind. 497, 518; *Hazzard* v. *Citizens State Bank* (1880), 72 Ind. 130; *Forsythe* v. *City of Hammond* (1895), 142 Ind. 505, 513; *Board, etc.,* v. *Legg* (1887), 110 Ind. 479; *Roberts* v. *Kendall* (1895), 12 Ind. App. 269; *Hunt* v. *Conner* (1901), 26 Ind. App. 41. "It is not error to assume in the charge facts established by uncontroverted evidence." 19 Dec. Dig. p. 921. The doctrine thus announced is not in conflict with that class of cases disapproving a peremptory instruction to find in favor of one on whom rests the burden of the issue, when the determination of that issue involves the credibility of witnesses, and inferences and deductions drawn from established facts. *Jacobs* v. *Jolley* (1902), 29 Ind. App. 25; *Wagner* v. *Weyhe* (1905), 164 Ind. 177; *Haughton* v. *Aetna Life Ins. Co.* (1905), 165 Ind. 32. The reasons assigned for declaring this instruction erroneous are not sustained.

What we have said with reference to the objections urged against this instruction, applies with equal force to the specific defects claimed in each of the other instructions. Our investigation of the questions under consideration has

been strictly limited to the objections and reasons pointed out by appellants, but we do not mean to approve the instructions as against other objections which might be urged against them.

Judgment affirmed.