William Arnd, Appellee, v. W. J. Jones, Appellant.

BILLS AND NOTES: Due-Course Holder—Evidence. No hard and fast rule can be laid down as to exactly what the purchaser of negotiable paper must do to protect himself as a purchaser in due course. Evidence held to show holdership in due course as a matter of law.

*Appeal from Montgomery District Court.*—J. B. Rockafellow, Judge.

February 12, 1924.

ACTION to recover on three promissory notes, which defendant claims were procured from him by fraud. The plaintiff claims to be a purchaser in due course. At the close of all of the testimony, the court directed a verdict for the plaintiff, and the defendant appeals.—*Affirmed*.

*Ratcliff & Swanson,* for appellant.

*George H. Mayne* and *Clifford Powell,* for appellee.

FAVILLE, J.—On January 17, 1920, appellant executed and delivered to the Farmers Mortgage Company his two certain promissory notes for the sum of $1,125 each, due in six months from date, and bearing interest at eight per cent. On February 13, 1920, he gave to the same company another note of $2,250, due in six months, bearing interest at eight per cent. The first two of said notes were purchased by appellee on January 22, 1920; the third note was purchased on February 14, 1920.

The evidence in behalf of appellant discloses that he is a farmer, living near Elliott, Iowa; that, on or about the 17th of January, 1920, an agent of the Farmers Mortgage Company called upon him and sold him certain shares of stock in said Farmers Mortgage Company. He testified that, at the time of the sale, the agent represented to him that said company was in a good and sound condition; that he would never have to pay the notes which he gave for stock therein; but that they would be renewed, from time to time, until the dividends of the company would pay them off; that the company was paying from 24 to 30 per cent a year on the stock; and that the stock could be resold within six months at a big profit. He gave two of the notes in suit at said time, as the purchase price of shares of stock in said Farmers Mortgage Company. On February 13th, he was called upon by another agent of the said mortgage company, who sold him an additional number of shares of stock, for which he gave one of the notes in suit. He claims that said agent made substantially the same representations to him as did the first agent, with some enlargements as to the profits he could make by resale of his stock.

The evidence also tends to show that, in July, 1921, the Farmers Mortgage Company was adjudged bankrupt, and that

the only assets of the company that passed into the possession of the trustee in bankruptcy were certain office furniture, three city lots in Omaha, $257 in money, and about $300,000 of stock subscription notes. It also appears that the said mortgage company had its main office in Council Bluffs, with other offices in New York and Chicago; that it never earned any dividends; and that it took in between two hundred and four hundred dollars in cash while operating.

The evidence is sufficient to take the case to the jury on appellant's claim that the notes were procured from him by misrepresentation and fraud.

Appellee testified that he was in the real estate and insurance business in Council Bluffs, and engaged in buying and negotiating promissory notes. The undisputed evidence tends to show that appellee knew that the Farmers Mortgage Company was a corporation operating in Council Bluffs, and appellee's office was about two blocks from the office of said company. He testified that he at one time had a conversation with the president of the company, whom he knew, and whose standing was good in the community, and who informed him that the company was in good shape, and carrying on a legitimate business.

It further appears that appellee is a director in the First National Bank at Council Bluffs, and is frequently at said bank; that, when in said bank, on or about the 22d of January, he was asked by the president of the bank in regard to purchasing certain notes of the Farmers Mortgage Company. He testified that he made inquiry of the president of the bank as to what the notes were given for, and that he did not go to the office of the Farmers Mortgage Company and make inquiries in regard to the notes; that someone at the bank telephoned the office of the mortgage company, and a stenographer brought the notes down to the bank; that appellee telephoned to a banker at Elliott, and asked him in regard to the financial standing of appellant, and was informed by the banker that appellant was a man of means, and that his notes were perfectly good; that appellee paid for the notes by giving liberty bonds therefor at par value, and took the notes at their face value.

With regard to the purchase of the third note, appellee's evidence shows that he was at the bank, when he was again

asked by the president if he would purchase another note from the same party, and he did so under similar circumstances, and paid for it in the same way. He testified that he had no knowledge of the man who indorsed the note as agent for the payee company. He also testified that he could not tell the exact value of the bonds at the time of the purchase of the notes; that they were of different issues, and were worth ninety cents and upwards. There was no evidence as to their actual value. The books of the company showed the sale of the notes at face value.

The foregoing is the substance of the testimony in behalf of appellee.

The sole question for our consideration is whether or not the evidence was sufficient to take the case to the jury. Appellant having offered testimony of the fraudulent representations that induced the execution of the notes, the burden rested upon appellee to establish that he was a holder in due course. Code Supplement, 1913, Section 3060-a59; *State Bank of Chicago v. Oyloe Piano Co.,* 195 Iowa 1152; *Anderson Sav. Bank v. Hopkins,* 195 Iowa 655; *Second Nat. Bank v. Scanlon,* 196 Iowa 1305.

We have frequently declared that, in a case of this kind, the evidence that the payee of a negotiable instrument is a holder in due course may be so indubitable as to make it the duty of the court to direct a verdict in behalf of the holder of such instrument, even though it be established that the instrument was procured by fraud on the part of the original payee. We have also held that, although the payee may offer testimony direct and positive to the effect that he is a holder in due course, still the facts and circumstances surrounding the transaction may be such as to leave the question as to whether or not the payee is a holder in due course one for the determination of the jury.

The cases supporting said propositions respectively are collected in *Second Nat. Bank v. Scanlon,* supra.

We are of the opinion that the instant case falls within the first of these classes, and that the trial court did not err in directing a verdict. No hard and fast rule can be laid down as to exactly what the purchaser of negotiable paper must do to protect himself as a purchaser in due course. There was nothing about the transaction in question to place any suspicion whatever

in the mind of appellee that the notes had been obtained by false or fraudulent representations. It is contended by appellant that appellee should have gone to the office of the Farmers Mortgage Company and made inquiry there in regard to the notes, before buying them, and that it was likewise his duty to have called appellant on the telephone, or otherwise communicated with him, and ascertained from him as to whether the notes were valid; and it is likewise claimed that the fact that he exchanged for the notes government bonds that were not of par value at the time was a circumstance which, with the others, was sufficient to carry the case to the jury.

. We do not think that the matters urged by appellant are sufficient circumstances to carry to the jury the question of whether the appellee was a purchaser in due course. The question is a close one on the proposition as to whether or not there were any facts or circumstances surrounding the transactions, as disclosed by the evidence, sufficient to carry to the jury the question as to whether or not appellee was a purchaser in due course, but we are disposed to concur in the conclusion of the trial court that there were no sufficient circumstances established in this case to carry to the jury the question as to whether or not appellee was such purchaser.

A verdict in behalf of appellant could not have been permitted to stand, upon this record. The trial court did not err in directing a verdict in behalf of appellee, and the judgment appealed from is, therefore,—*Affirmed*.

Arthur, C. J., Evans and Preston, JJ., concur.