OTTUMWA NATIONAL BANK, Appellee, v. F. I. STARNS et al.,
Appellants.

**PLEADING:** Reply—Improper Use. Principle recognized that a plain-
tiff may not utilize a reply for the purpose of radically departing
from the cause of action made by him in his petition. So held where
plaintiff pleaded in his petition as an assignee, and in his reply as a ·
holder in due course.

**FRAUD:** Fraudulent Representations—Jury Question. Competent evi-
dence of fraud in the execution of a lease and promissory notes,
though not free from inconsistencies, and contradicted in part, gener-
ates a jury question. (See Book of Anno., Vol. 1, Sec. 11493, Anno.
56 *et seq.*; Sec. 11508, Anno. 120 *et seq.*)

**BILLS AND NOTES:** Holdership in Due Course—Jury Question. Hold-
ership in due course of a negotiable promissory note as collateral
security for a pre-existing debt is not shown as a matter of law by
testimony which, besides being in part impeached, is uncertain as to
how, when, and under what circumstances the note was acquired and
when the indorsement was made; and especially is this true when the
holdership in due course bears the appearance of being an after-
thought, born subsequent to the filing of the petition. (See Book of
Anno., Vol. 1, Sec. 9515, Anno. 4 *et seq.*)

Headnote 1: 31 Cyc. pp. 255, 261. **Headnote 2:** 27 C. J. p. 72; 38
Cyc. p. 1569. **Headnote 3:** 8 C. J. p. 1061.

Headnote 1: 21 R. C. L. 556. **Headnote 2:** 12 R. C. L. 449. **Head-
note 3:** 3 R. C. L. 1066.

*Appeal from Wapello District Court.*—F. M. HUNTER, Judge.·

OCTOBER 19, 1926.

Defendants appeal from a judgment rendered on a directed
verdict for rent represented by lease and promissory notes.—
*Reversed.*

*Lloyd L. Duke,* for appellants.

*Jones & White,* for appellee.

MORLING, J.—The questions presented in argument are: 1.

Whether there was sufficient evidence to go to the jury upon the defendants' claim of fraud in the procurement of the lease and notes sued upon. 2. If so, whether plaintiff's claim to being a holder in due course of the notes had such support in the record as to require the direction of the verdict. Plaintiff claims, thirdly, that there is no competent testimony tending to show that the rental value was less than defendants agreed to pay, upon which an award of damages might be made.

We may say, in the first place, as will be seen in the progress of the discussion, that the action is brought by the plaintiff, as assignee of the lease and notes sued upon. The lease and notes, as between the original parties, constituted a single contract. The plaintiff, as the assignee of the contract, stands in the position of its assignor, and subject to the same defenses as would be available in behalf of the defendants against the assignor. The plaintiff's cause of action, as set forth in its petition, is one upon the lease and notes, as assignee thereof. Plaintiff, by reply, alleges, in substance, that it is a holder in due course. The reply is a departure from the petition. On the plaintiff's pleadings, therefore, the plaintiff's claim as a holder in due course is not in the case. The case was tried, however, on the theory that plaintiff, on its pleadings, claimed to have the rights of a holder in due course. It is on the theory on which the case was tried, and not on the theory upon which the plaintiff's cause of action is pleaded, that we proceed to discuss the questions argued.

1. PLEADING: reply: improper use.

I. The record before us does not set out copies of the notes and lease sued on. The notes are assumed by both parties to be payable to the order of H. G. Sevier, and to be negotiable in form. They will be so considered in the discussion of the case. The notes are dated January 28, 1924. There are two of them for $250 each, one payable September 1, 1924, and the other January 1, 1925. The lease is for 80 acres, for a rental of $500 (payable by the two notes) and share of orchard crop. It was acknowledged March 1, 1924. The date is not given except in the petition, where the lease is alleged to have been made about the —— day of January, 1924. Defendant Lydia is not mentioned in the record, further than as one of the makers of the notes and lease, and for brevity of discussion will be ignored. There is testi-

2. FRAUD: fraudulent representations: jury question.

mony to the following effect: Defendant F. I. Starns had never seen the farm, or been out in that direction, and knew nothing about the character of the soil or kind of land it was. Sevier took him to it when there was at least eight inches of snow on the farm. He was unable to see what kind of soil it was, and could not see the rocks and stumps. Sevier told him that it was good corn land; that there was no better corn land in Iowa. Sevier represented that the land was good, tillable land and good farm land. Sevier represented that the orchard was a good, bearing orchard; that 1,400 bushels of pears had been raised on the place the year before; and that the tenant's share of the profits the year before had amounted to $2,800. Sevier represented that the pasture land was good pasture land, and would carry all the stock which defendant had to bring out there, the amount of which defendant explained to him. Sevier represented that there was a well at the house which always furnished water. Defendant saw a pump standing there on the porch. Defendant relied upon these representations, and was caused thereby to sign the lease. Defendant moved on the place, and lived there about a month prior to March 1, 1924, when the lease was signed. Snow was on the ground during all that time. The pump did not work, but defendant thought Sevier would fix it, as he promised. The representations were not true. There was not more than six acres that would raise corn. The land was gravel, washed in ditches, and thickly set with stumps and rocks. The pump which defendant saw was connected by pipe with a well at the barn, and never worked. The tenant the year before raised between 400 and 500 bushels of pears, instead of 1,400. The net from the farm for each of the two next preceding years was $500, and for the year before that, $400. The orchard was not a good, bearing orchard. The land had no rental value. We may here parenthetically dispose of the claim that there was no competent evidence on this subject. Defendant had been a farmer for six years, most of the time in that county, and was acquainted with the rental value of farm lands there. He was asked what was the fair, reasonable rental value,—whether it had any rental value as it actually was,—and answered, ''No.'' A witness who had followed farming practically all his life, and whose farm practically adjoined that in question, and who was acquainted with cash rental values in the vicinity, testified that

the farm had no cash rental value for that year. He also said that he would hate to have to give over $3.00 an acre, if that. One of plaintiff's witnesses testified that the rental value would be around $450 a year. The evidence was in the record, and its weight was for the jury. The evidence tending to show fraud is not free from inconsistencies, and is contradicted to a considerable degree, but not totally, by opposing evidence. Sevier had owned the farm for a number of years, and was familiar with the facts concerning which he was charged with misrepresentations. The case on the defendant's plea of fraud was clearly for the jury.

II. If the notes were procured by fraud, the burden was on the plaintiff to prove that it acquired the title as a holder in due course. Code of 1924, Sections 9515, 9519. The question is whether the plaintiff discharged this burden by producing evidence of such force that reasonable minds might not differ upon the conclusion.

3. BILLS AND NOTES: holdership in due course: jury question.

No question is raised upon the plaintiff's pleadings, as such, but the defendant refers to them as bearing on plaintiff's claim to being a holder in due course. The petition alleges that, about the —— day of January, 1924, defendants leased of Sevier, by written lease, the described premises for the year named, and jointly executed the two notes for $250 each, as in the lease contemplated. The petition sets out a copy of the lease and the notes. It does not, however, show that the notes were indorsed by Sevier. The petition alleges that, on or about the —— day of ———, 1924, Sevier transferred the notes to plaintiff, and assigned to plaintiff the written lease; "that the transfer of said notes and the assignment of said lease was for good and valid consideration; and that the plaintiff is the bona-fide holder of said notes; * * * that, under the terms of said lease assigned to the plaintiff, * * * the said defendants promised and agreed to pay as rent for the said premises the sum of $500," payable $250 on September 1, 1924, and $250 on January 1, 1925; that said payments were evidenced by two promissory notes. The petition further quotes the provision in the lease by which failure to keep any of its covenants or to pay either of the notes shall cause both notes to become due at once, without notice. It alleges "that the defendants have failed and neglected to pay the

rent falling due September 1, 1924, and that the plaintiff, as assignee of the lease, hereby elects to, and does hereby, declare both of said payments to be due and payable. * * * that the defendants entered upon, and has continued in possession * * * and that there are now due and owing to the plaintiff from the defendants as rent for said premises the sum of $500 * * * that this action is commenced to recover rent accrued within one year * * *'' Judgment is demanded for $500, with interest and costs, and that a writ of attachment issue, without bond, for the enforcement of plaintiff's lien.    Defendant moved to require plaintiff to state more specifically when the assignment of the notes was made, and what the consideration was, and to set out a copy of the assignment, showing its date.    To this plaintiff responded:

"That the assignment of the notes and landlord's lease to plaintiff was made in August, 1924, * * * as collateral security to the indebtedness of H. G. Sevier to said plaintiff; that there is no written assignment of said lease and notes."

Plaintiff filed an amendment, on the first day of the trial, stating for the first time that the transfer of the notes was made by indorsement in blank by Sevier during the month of August, 1924, at the time of the transfer.    By reply, the plaintiff alleged that it was a holder of the notes in due course.    Plaintiff's president was an attorney, whose attention was called, as he says, to the transfer of the notes to the bank within a day or two, and who says that he had no personal recollection as to whether the signatures appeared on the back of the notes at that time.    He drew and verified the original petition, which was filed September 15, 1924.    He also drew the amendment alleging that there was no written assignment of the lease and notes.    This amendment was verified by the cashier.    The cashier testified that he had charge of the transaction of taking the notes; that they were indorsed at the time of delivery, which was sometime in the fore part of August, as nearly as he could remember, before due; that at that time he had no reason to know or think but that the notes would be paid when due.    The president testified:

"I nor any officer, agent, or employee of the bank, to my knowledge, had any notice of any claims or offsets made by Mr. Starns at the time or before we took these notes, and I knew

nothing about the nature of the transaction between Mr. Sevier and Mr. Starns at the time or before I took these notes."

The cashier says that the day he was testifying when the amendment was filed was the first time he noticed that the stenographer had failed to put the indorsement on the copy of the notes, and explains that the motion did not ask about any indorsement. He testified that he had no independent recollection of seeing Sevier sign his name or indorse the notes. He says:

"I would swear that Mr. Sevier indorsed the notes at the time that he transferred them to the bank, but I cannot swear that I remember seeing him indorse them. I did see him indorse them unless I was looking out of the window."

The indorsement was in lead pencil. Sevier testified that he turned the notes over to the plaintiff in 1924, and indorsed them at that time. The notes were taken by the plaintiff as collateral to existing indebtedness of Sevier, interest on which was then due. No claim is made of any extension of credit or change of position on account of the collateral. The cashier testified that there were no records in the bank to show that the indorsements were made on the notes. He couldn't fix the date when they were turned over; didn't make any record on any of the bank's books or on the notes, the date he got them. The president testified that they had no record of any kind to show anything about this transaction, except that they had the notes in the collateral file.

It will be noticed that the plaintiff claims to have had the notes only a month or less before the first one was due; that apparently no entry was made on Sevier's liability account or elsewhere of the existence of any such security or collateral; that petition was filed on September 15th; that the action was brought by plaintiff, as assignee and holder of the lease and notes, and was founded upon the lease, and to recover rent; and that the provision of the lease accelerating the maturity of the second note was by the petition injected into the notes. Such cause of action was persisted in by the amendment, which alleged that the notes, as well as the lease, were assigned to plaintiff, and which was drawn by the president, a lawyer, and sworn to by the cashier. By the reply, as has been noted, a departure was made to a claim as holder of the notes in due course. As

assignee merely of the notes, the plaintiff's claim to them would be subject to defendant's equities. It is not shown that any other officer or employee whose notice or knowledge would be chargeable to the plaintiff had no connection with the transaction. The plaintiff did not undertake to show the details of the transaction by which it acquired the notes. The president and cashier testified that they made no inquiry on the subject of fraud. They said they had transacted much business with Sevier, and regarded him as trustworthy, and had never had any difficulty in collecting notes taken from him because of misrepresentation. There was impeaching testimony of Sevier, consisting of statements (denied by him) .that "he simply put up the Starn note for collection, and that was the reason they didn't give him any credit, as he simply placed them with the bank for collection; that he did not expect them to give him any credit, and he thought he was going away, and that was why he placed them in their hands for collection."

While an antecedent or pre-existing debt constitutes value (Code of 1924, Section 9485), it does not constitute the parting with value or change of position from which a presumption of good faith may arise. As between the original parties, the contract consisted of the lease, of which the notes were an incident. The plaintiff, by its petition and first amendment, assumed for itself, as assignee, the benefit of this rule, and founded its action upon the entire contract. The plaintiff was claiming to recover by virtue and as assignee of the contract represented by the lease and notes, and was seeking to obtain the benefits without the burdens of an assignee, by claiming, by belated amendment and in reply, the position of indorsee in due course. It is not for the court, on this record, to hold, as a matter of law, that the plaintiff is an indorsee in due course, and not an assignee. We speak of this, not as a matter in issue, or to be submitted as such to the jury, but as an evidentiary circumstance merely, shown by the record, which, with plaintiff's explanation, the triers of fact are entitled to take into consideration, in passing upon the evidence offered by plaintiff to show that it is a holder in due course. The testimony of the plaintiff's witnesses was not free from inconsistencies and dubious circumstances. One of them was impeached by testimony of contradictory statements. Plaintiff is required to prove good faith. This is done by proving the cir-

cumstances under which the notes were acquired, in order that the jury may determine from them whether the purchase was in good faith. *Canajoharie Nat. Bank v. Diefendorf*, 123 N. Y. 191 (25 N. E. 402, 10 L. R. A. 676); *Mee v. Carlson*, 22 S. D. 365 (29 L. R. A. [N. S.] 351, 117 N. W. 1033, 1035); *Giberson v. Jolley*, 120 Ind. 301 (22 N. E. 306). We are of the opinion that it was for the jury, and not for the court, to determine whether the plaintiff was a holder in due course. *McNight v. Parsons*, 136 Iowa 390; *Connelly v. Greenfield Sav. Bank*, 192 Iowa 876; *City Nat. Bank v. Mason*, 192 Iowa 1048; *First Nat. Bank v. Brown*, 197 Iowa 1376; *First Nat. Bank v. Dutton*, 199 Iowa 468; *McLaughlin-Gormley-King Co. v. Hauser*, 195 Iowa 224; *Arnd v. Jones*, 197 Iowa 244.

The judgment is—*Reversed*.

DE GRAFF, C. J., and EVANS, STEVENS, and ALBERT, JJ., concur.