C. I. T. CORPORATION, Appellant, v. S. M. FURROW, Appellee.

No. 44880.

JANUARY 16, 1940.

REHEARING DENIED MAY 18, 1940.

F. E. Van Alstine and Brammer, Brody, Charlton & Parker, for appellant.

Shaw & Shaw, for appellee.

SAGER, J.—The facts are not in dispute. One Brechler bought the automobile in question on August 10, 1937, signing a conditional sales contract which was immediately assigned to the plaintiff. This contract was not recorded until May 31st following. Meanwhile defendant had taken his mortgages. The first was dated May 2d for the sum of $284.80. On May 20th the second mortgage was executed in the sum of $450. Both were filed before plaintiff's contract went on record. Prior to the transactions narrated, Brechler was indebted to the defendant and an associate on a contract by which he undertook to purchase a house. The first mortgage was made to secure money advanced for such payment. Later Brechler, being further delinquent on his contract, gave to the defendant the $450 mortgage, of which $300 was applied to the payment past due, and the remaining $150 turned over to Brechler in cash. How

much of this money, if any, was applied towards payment on the house, or to other bills, does not appear. Both the defendant and Jensen, who had an interest in the house contract, swore that they had neither knowledge nor notice of plaintiff's rights at the time these mortgages were taken, except as the jury might have found from the testimony of Hudson to which reference will hereafter be made. As stated above, the trial resulted in favor of the defendant.

Appellant's first complaint is that there was error in failing to submit to the jury whether or not appellee gave value for the mortgages. The court gave an instruction in part as follows:

"The sole question for you to determine in this respect is whether or not the defendant had knowledge, notice or information as to the existence of the conditional sales contract owned by plaintiff until after he had taken the said chattel mortgages; and the burden of proof is on the defendant to show that neither he nor Louis Jensen, whom it appears was a party in the said chattel mortgages and one of the vendees, had notice or knowledge or information as to the existence of said conditional sales contract."

The instruction goes on to say, in effect, that, if the defendant had proven lack of such knowledge as was required, the verdict should be for the defendant; otherwise for the plaintiff. The burden of the objection at this point is that the instructions were silent as to what constitutes a "subsequent purchaser", and failure to require the jury to determine whether appellee gave *value* so as to bring him within the meaning of that term "subsequent purchaser", as used in Code sections 10015 and 10016. We hold there was no error at this point. The question of notice was the only issue to be submitted to the jury. Appellant calls our attention to that line of our cases holding that a pre-existing debt is not sufficient to make one a subsequent purchaser for value within the meaning of Code sections 10015 and 10016, but these cases are not applicable here for the reason that the record establishes without question that for appellee's mortgages there was a new and distinct consideration in the way of payments advanced by appellee on the land contract between appellee and Brechler and cash actually paid to the said Brechler and "grace to keep on trying to keep up his contract on his house."

We have held that the extension of time for the payment of an obligation is a valuable consideration. Goff v. Milliron, 221 Iowa 998, 266 N. W. 526. See also Hughes v. Wessell, 226 Iowa 811, 285 N. W. 200. Ottumwa National Bank v. Starns, 202 Iowa 412, 210 N. W. 455, is cited as supporting a different view but a reading of the case discloses that it does not bear on the point before us. Appellant, in argument, says that "it is admitted that in parting with new consideration for a mortgage upon the car, the appellee would, in absence of any knowledge or notice of the appellant's conditional sales contract, acquire an interest in the mortgaged automobile to the extent and value of the new consideration given." As said above, since there is no dispute on the facts, except as to notice, there was no other question that the court could submit on this phase of the case. The foregoing makes a discussion of section 10005, as it appears in chapter 435 of the Code (sales law), unnecessary.

██▪ Appellant urges that the defendant paid out in actual cash only $150 and that in no event can his recovery exceed that amount. Even if the only new consideration advanced by appellee was the money (as it was not as we have shown) appellant is not in a position to take advantage of that contention because of the state of the record. In the first place the trial proceeded and came to a conclusion on the issue of right to possession. Appellant lost. Up to that time it had made no concession by pleading or otherwise that anything less or other could be considered; neither did plaintiff ask any instruction which might have suggested to the trial court that plaintiff conceded that that might be a subject for decision. Having failed to sustain its broad contention, appellant filed a "Bill of Exceptions" to the instructions. One ground was too indefinite to inform the court what was being complained of. It simply said that the instructions "failed to inform and instruct the jury as to the proper amount of damages recoverable." Another was that the court erred in "failing to limit the amount of recovery * * * to the sum of $150." To have given this clearly would have been error. In the motion for new trial the instructions were complained of only in the same way. We find no error here. Knudson v. Gieson, 38 Iowa 234; Harvey v. Pinkerton & Wilson, 101 Iowa 246, 70 N. W. 192; and McNorton v. Akers, 24 Iowa 369, do not call for a different result.

██ Appellant's third and fourth complaints may be con-

sidered together. They have to do with the alleged error of the court in refusing to grant a new trial because the court, from the bench, made erroneous, misleading and prejudicial statements of the law; and misconduct in discrediting the testimony of appellant's chief witness. Plaintiff cites familiar authorities to the effect that the presiding judge in any case should refrain from remarks indicating an opinion as to the merits of the case, the truth or falsity of testimony, or which tend to discourage or disparage any witness or evidence. Appellant is without standing to present this complaint because there were no objections made or exceptions taken to the examination by the court of the witness Hudson. The significance of Hudson's testimony is (and it goes back to the question of notice submitted to the jury) that he had a talk with the defendant with reference to this particular car before the witness, an attorney, prepared one of the mortgages for the defendant. This quotation from the abstract will disclose the nature and significance of this part of the testimony:

"Several days prior to April fifteenth, which is the date this chattel mortgage bears, Mr. Furrow and I had a conversation, as I say either in the lumber-yard, or in the street immediately before it, and no names were mentioned. The question was what position a chattel mortgage bore in relation to a conditional sales contract, and I told him that in my opinion not very good, because the maker of the chattel mortgage had no title to the property. And then, pursuant to that, he said that he was figuring on taking a chattel mortgage from Harold Brechler and there was some payments due the Finance Company and he wanted to know where he would stand in relation to them, and I told him I didn't think the chattel mortgage was very good. And I think Sam said—well, he said, it would be better than nothing, he said, and I said, yes."

The purpose of questioning by the court was to determine whether Attorney Hudson was acting in the relation of attorney and client so as to decide whether to exclude this testimony from the consideration of the jury. The testimony was allowed to stand and the incident closed with this observation by the court: "I don't know how far the law goes. In the meantime you can look that up tonight." The subject was never called up again and the jury had the benefit of Hudson's testimony.

966

■ The fifth and last complaint of appellant has to do with the court's refusal to extend the time in which to file a motion for a new trial "in order that counsel might have time to canvass the jury and make a proper showing of the prejudicial effect of certain remarks made by the Court in the presence of the jury during the trial." Attached to its motion for new trial is an affidavit of one of the jurors, purporting to set forth the fact that the examination of the witness Hudson by the trial court had the effect of leading the jury to disbelieve that witness to the distinct disadvantage of the plaintiff. Appellant concedes that the matter of extension of time for filing a motion for a new trial is ordinarily within the discretion of the trial court, but urges that here judicial discretion was abused. We have read and re-read that part of the abstract dealing with this incident. We are unable to read it to the conclusion stated by this juror in her affidavit. Without going into the question of how far or when a jury may discredit its own verdict, it is sufficient to say that there is no error here because, if for no other reason, as stated above, no exceptions were taken to the examination by the trial court.

Finding no error in the record, judgment is affirmed.—Affirmed.

All JUSTICES concur.