CITIZENS' TRUST & SAVINGS BANK, Appellant, v. EMPEY et al. (Catherine B. Empey, Respondent).

(148 N. W. 606.)

1. **Negotiable Instruments—Consideration, False Representations Concerning—Notice to Indorsee, Sufficiency of.**

Where plaintiff, at time a note executed for purchase price of bank shares was transferred to plaintiff, knew only that the bank was "a little low on its reserve," and that the note was given for said shares, such knowledge did not charge plaintiff with notice of fraudulent representations by vendor of the stock, to makers of the note, concerning the condition of the bank, so as to bring home to plaintiff knowledge of facts, under Civ. Code, Sec. 2452.

2. **Same—"Indorsee in Due Course"—Collateral Security.**

An indorsee of a negotiable note, given as collateral security for a pre-existing debt, who takes it in the usual course of business, and without notice of any infirmity in the indorser's title, is an indorsee in due course, and a holder for value, under Civ. Code, Secs. 2199, 2200.

(Opinion filed September 8, 1914.) –

Appeal from Circuit Court, Walworth County. Hon. JOSEPH H. BOTTUM, Judge.

Action by the Citizens' Trust & Savings Bank against E. E. Empey and others, upon a promissory note of which plaintiff was transferree. From a judgment in favor of Catherine B. Empey, but in favor of plaintiff as against the other defendants, and from an order denying plaintiff's motion for a new trial, it appeals. Reversed and remanded.

*J. E. Clayton,* and *Juckett & Adams,* for Appellant.

No brief was filed on behalf of Respondent.

(2) Under point two of the opinion, Appellant cited:

Civ. Code, Secs. 2199, 2200; Iowa National Bank v. Sherman et al., 17 S. D. 396, 97 N. W. 12; Swift v. Tyson, 16 Pet. 1, 10 L. Ed. 865; Exchange National Bank v. C. B. Coe, 94 Ark. 387, 127 S. W. 453, 31 L. R. A. (N. S.) 287; Farmers' State Bank of Lyons v. Dixon et al., 136 N. W. 845; Second National Bank of Bucyrus, Ohio, et al. v. Warner (N. D.), 126 N. W. 100.

GATES, J.   This is an action upon a negotiable promissory note for $3,000, dated November 15, 1911, and due January 31, 1912, given by defendants Catherine B. Empey and E. E. Empey, her husband, to the defendant Nelson, and by him indorsed and delivered to plaintiff.   The consideration for the note was 53 shares of stock in the Farmers' State Bank of Mobridge, bought by Mrs. Empey from Nelson.   The plaintiff claims to be the holder of the note "in due course."   The answer of the defendants Empey alleged fraudulent misrepresentation by Nelson as to the value of the bank stock; their reliance thereon; the rescission of the deal by Mrs. Empey; and knowledge of the fraud by plaintiff. Trial by jury was had.   Verdict and judgment were rendered in favor of plaintiff and against defendant E. E. Empey and in favor of defendant Catherine B. Empey against the plaintiff.   From the judgment in favor of Catherine B. Empey, and from the order denying a new trial, plaintiff appeals.

[1] At the time of purchase by Mrs. Empey, 30 shares of Nelson's stock was in the plaintiff bank as collateral to his note for $2,000 and a note of his brother of $1,000.   On November 18, 1911, Nelson and E. E. Empey went to the office of plaintiff at Aberdeen, taking the stock book of the Mobridge bank.   The Nelson shares were turned back to him, and the note in suit, together with the new certificates for the 53 shares to Mrs. Empey, were turned over to the plaintiff in lieu of the Nelson paper and the Nelson shares.   The two Nelson notes were taken up and new paper for $3,000 executed by defendant Nelson to plaintiff.   This $3,000 note of Nelson was retained by the bank; the officers stating at the trial that it was held as collateral to the Empey note.   Plaintiff knew that the Empey note was given for the shares of stock. It also appears that the plaintiff knew that the required reserve of the Mobridge bank was a little low at that time.   Mr. Hansen, the cashier of the plaintiff bank, testified:

"When the reserve is only 13 per cent, it shows that there was a failure to collect in money to make the reserve good, and it would show poor management.   *   *   *   During the year 1911 there were a good many banks whose reserve was below the necessary requirements on account of the short crops."

This knowledge on the part of the plaintiff that the bank's reserve was a little low is the only thing in the record that even

suggests a connection of plaintiff with knowledge of the alleged fraudulent representations of Nelson to Mrs. Empey. It falls far short of even approximating it. Section 2452, Civil Code, provides:

"Every person who has actual notice of circumstances sufficient to put a prudent man upon inquiry as to a particular fact, and who omits to make such inquiry with reasonable diligence, is deemed to have constructive notice of the fact itself."

In this case there was nothing whatever tending to put the plaintiff upon inquiry as to the legitimacy of the transaction between Nelson and Mrs. Empey, so that the decisions of this court in Kirby v. Berguin, 15 S. D. 44, 90 N. W. 856, and Rochford v. Barrett, 22 S. D. 88, 115 N. W. 522, have no application.

[2] This case is not governed by the negotiable instruments law, because that act had not been adopted at the time of the transaction. Sections 2199 and 2200 of the Civil Code provide:

"Sec. 2199. An indorsee in due course is one who in good faith, in the ordinary course of business, and for value, before its apparent maturity or presumptive dishonor, and without knowledge of its actual dishonor, acquires a negotiable instrument duly indorsed to him, or indorsed generally, or payable to the bearer."

"Sec. 2200. An indorsee of a negotiable instrument, in due course, acquires an absolute title thereto, so that it is valid in his hands, notwithstanding any provision of law making it generally void or voidable, and notwithstanding any defect in the title of the person from whom he acquired it."

The appellant, then, not being charged with notice of any defect in Nelson's title to the note, the only remaining question necessary to be determined is whether appellant was in other respects an "indorsee in due course." It is not claimed by plaintiff that the Empey note was taken in payment of the pre-existing debt of Nelson, because the Nelson indebtedness was not extinguished. It was simply evidenced by a new note. Therefore the decision of this court in Iowa National Bank v. Sherman, 17 S. D. 396, 97 N. W. 12, 106 Am. St. Rep. 778, does not quite reach the point. We think it immaterial, however, to the decision of this case whether the Nelson note be regarded as collateral to the Empey note or vice versa. Under either theory, we think the appellant

must be held to be an "indorsee in due course." In the note on page 288 of 31 L. R. A. (N. S.), we find the following:

"The doctrine adopted by the federal courts and in a majority of the states, as well as that of England and Canada, is that an indorsee who takes a bill or promissory note in the usual course of business, before maturity, without notice of any infirmity, as collateral security for a pre-existing debt, is a bona fide holder for value, though there was no extension of time or other present consideration. This doctrine is known as the federal rule."

This is followed by exhaustive citations supporting the text. The contrary rule, known as the New York rule, with citations is set forth on page 292. The New York rule is followed in a number of the states, and, while it is not without good argument in its support, we agree with Chancellor Kent, who, in repudiating the New York rule of which he was the originator, said:

"I am inclined to concur in that decision (Swift v. Tyson, 16 Pet. 1 [10 L. Ed. 865]) as the plainer and better doctrine." 3 Kent, Com. 8.

We believe that is the view this court would have taken in Iowa Nat. Bank v. Sherman, supra, if the facts in that case had been appropriate. We are further convinced of the wisdom of this decision, in view of sections 25 and 27 of the negotiable instruments (Chap. 279, Laws 1913) and the discussion of this subject on page 293 of the volume of L. R. A. (N. S.) previously cited.

The judgment and order denying a new trial are reversed, and the cause remanded for a new trial.