OSCHENREITER, Appellant, v. BLOCK, Respondent.

(173 N. W. 736).

(File No. 4510.   Opinion filed July 22, 1919).

1.   Trial—Instruction, No Exception, No Review.

No exception having been taken thereto, the propriety of an instruction will not be reviewed on appeal.

2.   Negotiable Instruments—Fraud, Non-bona Fide Holder, As Defenses—Holder, Diligence Re Infirmatives, Old Rule, New Rule Under Negotiable Instruments Law—Directed Verdict, Whether Proper.

While, prior to the adoption of the Negotiable Instruments Law, an instruction in substance that one taking a negotiable note must use such means as an ordinarily prudent person would use in ordinary affairs to ascertain whether it was free from infirmaties, and whether the person negotiating it had title, and that purchaser cannot rely alone on non-information of any defense, defect of title, or infirmity in same, in order to constitute him a purchaser in good faith, but must show he used ordinary prudent means, etc., in ascertaining manner in which note was obtained from maker, and that burden is on him to show he used such means, etc., and that question is. one for jury,—conformed to the adjudicated law of this state as the "minority rule," yet by adoption of the Negotiable Instruments Law this jurisdiction has repudiated the minority rule, and acquiscenced in the majority rule, under which latter the bona fides of the tranaction are the decisive test of holder's rights; that he need not make inquires not required by good faith, as to possible defects of which he has no notice either from the face of the paper or facts communicated at the time; mere suspicion of defect of title or knowledge of circumstances which would excite suspicion in the mind of a prudent man, or even gross negligence on the part of the taker at time of transfer, will not defeat his title; that while neither gross negligence, nor knowledge of suspicious circumstances, of itself constitutes bad faith as a matter of law, it is evidence from which bad faith may be inferred by jury; that bad faith in

taking commercial paper does not necessarily involve furtive notices, but may be shown by willful disregard of and refusal to learn facts when at hand, and if purchaser for value before maturity has notice of facts tending to show defense to same, he cannot properly refrain from making inquiries as to inception of the paper, and at the same time claim to be a bona fide purchaser; said new law being a substantial codification of said rules. **Held**, therefore, that where evidence shows the note in suit was delivered to M for shares of stock in a corporate company being promoted by him, that M purchased an automobile from plaintiff and in payment turned over said note, another note executed by defendant's brother for $625 and $50 in cash, total $987.50, the selling price of the auto being $940, thus showing the two notes were taken at a proportional discount on the note in suit of $15.83, evidence being offered tending to show the note was secured from defendants by M's misrepresentation and fraud, trial court improperly denied a motion to direct verdict for plaintiff; there being no pretense that plaintiff had actual notice of an infirmity in the instrument, nor did the facts leave any issue for jury upon question of plaintiff's bad faith; the amount of the discount not being such as to cast suspicion upon his good faith, and the undisputed evidence showing he acquired and held it in due course of business as defined by Sec. 52 of Negotiable Instrument Law.

Smith, P. J., not sitting.

Appeal from Circuit Court, Day County. HON. THOMAS L. BOUCK, Judge.

Action by L. G. Oschenreiter, against Ben Block, to recover upon a promissory note. From a judgment for defendant, and from an order denying a new trial, plaintiff appeals. Reversed.

*Rex W. Harris,* for Appellant.

*Waddel & Dougherty,* for Respondent.

GATES, J. Action upon a promissory note for $312.50, executed May 23, 1916, to the order of himself, indorsed by him and subsequently acquired by plaintiff. Defense: That it was procured by fraud, and that plaintiff was not a holder in due course. Verdict and judgment for defendant. Plaintiff appeals from the judgment and an order denying a new trial.

It appears from the evidence that the note was delivered to one McDonald for shares of stock in the Dakota Underwriters' Company then being promoted by him; that McDonald purchased an automobile from plaintiff, who was engaged in the automo-

bile business at Webster, S. D., and in payment turned over to plaintiff the said note, another note executed by a brother of defendant for $625 (see This Plaintiff v. Joseph Block, 173 N. W. 734, decided herewith), and the sum of $50 in cash, making a total of $987.50. The selling price of the auto at Webster was $940. It was thus disclosed that the two notes were taken at a discount of $47.50, or a, proportional discount on the note in suit of $15.83. Evidence was offered tending to show that the note was secured from defendant by McDonald's misrepresentation and fraud. At the close of defendant's case, and again at the close of all the testimony, plaintiff moved for a directed verdict on the basis of sections 52 and 56 of the Negotiable Instruments Law (sections 1756, 1760, Rev. Code 1919), which motions were denied. Whether or not those rulings were correct is the sole question before us.

[1] After reading to the jury the said sections of the Negotiable Instruments Law, the court instructed the jury as follows:

"You are further instructed in this connection that the party who takes the note as the plaintiff in this action has taken this, must use such means as an ordinary prudent person would use in the ordinary affairs of life to ascertain whether or not the note itself was free from infirmities, and whether or not the person negotiating it had title thereto, or whether in other words, the person negotiating it had a title that was not defective; and in that connection the court further instructs the jury that the purchaser of a promissory note can not rely alone upon the fact that he has no information of any defense, defect of title, or infirmity in or to the same, in order to constitute him a purchaser in good faith, but he must go further and show that he used the means that an ordinary prudent person would use to ascertain the manner in which the note was obtained from the maker. He is not permitted to refrain from making inquiry but the burden is upon him to show that he had used the ordinary means to ascertain whether or not the note is valid in the hands of the vendor, and that question is a question of fact for you to pass upon and examine from all the evidence that has been introduced in this case."

No exception was taken to that instruction, so that the correctness of the instruction as such is not before us. It is only

reproduced as showing the attitude of the trial court as to the meaning of the above sections of the Negotiable Instruments Law, when it denied the motions for a directed verdict.

[2] Prior to the adoption of the Negotiable Instruments Law there is no doubt but that such instruction conformed to the law of this state as construed by this court. Landauer v. Sioux Falls Imp. Co., 10 S. D. 205, 72 N. W. 467; Kirby v. Berguin, 15 S. D. 444, 90 N. W. 856; Rochford v. Barrett, 22 S. D. 83, 115 N. W. 522; Mee v. Carlson, 22 S. D. 365, 117 N. W. 1033, 29 L. R. A. (N. S.) 351; Union Nat. Bk. v. Mailloux, 27 S. D. 543, 132 N. W. 168. It was known as the minority rule. In Daniel on Neg. Inst. (6th Ed.) § 775, the author says:

"In the United States the decisions of the courts have varied, some following the rule declared in Gill v. Cubitt, 3 B. & C. 466 (citing in a note three of the decisions of this court above named), but by far the greater number concurring in the principle which has been finally established as the law of England. Chancellor Kent, in his Commentaries, embodies the views taken in Gill v. Cubitt; but at that time the present prevailing doctrine had not been re-established, and it is to be supposed that he merely incorporated in his text the then existing decisions of the English courts. But both upon principle and authority, it is safe to say that the experience of the commercial world, and of the courts before which the doctrines here discussed have so often passed in review, have satisfied jurists, as well as men of business, that the interests of commerce are best subserved by the liberal view which promotes the circulation of negotiable instruments; and that the bona fides of the transaction should be the decisive test of the holder's rights. It is not the duty of parties about to purchase negotiable paper to make any inquiries not required by good faith, as to possible defenses of which they have no notice, either from the face of the paper, or facts communicated at the time."

In section 776 the author, after quoting section 56 of the Negotiable Instruments Law, says:

"It thus appears that the majority rule referred to in the foregoing discussion that there must have been actual notice or bad faith, has been codified in those states which have enacted the statute. According to that rule, and under the statute, mere

suspicion of defect of title or knowledge of circumstances which would excite suspicion in the mind of a prudent man, or even gross negligence on the part of the taker of the instrument at the time of the transfer, will not defeat his title. While neither gross negligence, nor knowledge of suspicious circumstances, of itself constitutes bad faith as matter of law, it is evidence from which bad faith may be inferred, and such facts when proven may be considered by a jury in arriving at the ultimate fact of good or bad faith. What constitutes this actual knowledge of bad faith, under the statute, has been the subject of judicial discussion. Bad faith in taking commercial paper, it has been said, does not necessarily involve furtive motives. It may be shown by a willful disregard of and refusal to learn the facts when available and at hand, and if a purchaser of a note for value before maturity has notice of facts tending to show defenses to the same, he cannot purposely refrain from making inquiries as to the inception of the paper, and at the same time claim to be a bona fide purchaser."

In Crawford's Ann. Neg. Inst. Law the following appears as one of the notes under section 56 of the law:

"The rule adopted in the statute is that which was established by the great weight of authority. In numerous well-considered cases it was held that the holder is not bound at his peril to be on the alert for circumstances which might possibly excite the suspicion of wary vigilance; he does not owe to the party who put the paper afloat the duty of active inquiry in order to avert the imputation of bad faith. The rights of the holder are to be determined by the simple test of honesty and good faith, and not by a speculative issue as to his diligence or negligence. The holder's right cannot be defeated without proof of actual notice of the defect in title, or bad faith on his part evidenced by crcumstances. Though he may have been negligent in taking the paper, and omitted precautions which a prudent man would have taken, nevertheless, unless he acted mala fide, his title, according to settled doctrines, will prevail."

It thus appears that by the adoption of the Negotiable Instruments Law this jurisdiction has repudiated the minority rule and acquiesced in the majority rule. Under that rule the trial court should have directed a verdict for plaintiff. There is no

pretense that appellant had actual knowledge of an infirmity in the instrument nor did the facts presented leave any issue to be submitted to the jury upon the question that appellant's acts in taking the instrument amounted to bad faith. Upon learning that the note was given for shares of stock in a new corporation, appellant asked McDonald for his credentials for doing business in this state, and was shown the certificate of incorporation of the company in this state and the consent of the insurance department permitting him to do business here. The amount of the discount was not such as to cast suspicion upon the good faith of appellant. It appeared from the evidence without dispute that appellant acquired the note in the usual course of business, and that he was the holder thereof in due course, as defined by section 52 of the Negotiable Instruments Law.

The judgment and order appealed from are reversed.

SMITH, P. J., not sitting.