## ORIENT STATE BANK, Appellant, v. ZEMLICKA, Respondent.

### (207 N. W. 69.)

(File No. 5401.   Opinion filed January 23, 1926.)

1.  **Bills and Notes—Burden of Proof—Holder in Due Course—Transferee Has Burden of Proving Character as Holder in Due Course, Where Maker Has Defense Against Payee.**

    In action on note, where maker proves a defense against payee, transferee has burden of proving that he acquired title as holder in due course, in view of Rev. Code 1919, Sec. 1763.

2.  **Bills and Notes—Notice—Right of Holder Cannot Be Defeated Without Proof of Actual Notice of Defects in Title.**

    In view of Rev. Code 1919, Sec. 1760, right of holder of negotiable note cannot be defeated without proof of actual notice of defects in title or bad faith, and holder is not bound at his peril to be on alert for circumstances which might possibly excite the suspicion of wary vigilance.

**3.   Bills and Notes—Holder in Due Course—Plaintiff Held Holder of Note in Due Course Under Evidence.**

In action on note, evidence held to show that transferee, who purchased note on written authority of maker, was a holder in due course.

Appeal from Circuit Court, Hyde County; Hon. John F. Hughes, Judge.

   Action by the Orient State Bank against Henry J. Zemlicka. Judgment for defendant, and plaintiff appeals.   Reversed and remanded, with directions.

*F. E. Snider,* of Faulkton, for Appellant.
*M. Harry O'Brien,* of Highmore, for Respondent.

CAMPBELL, J.   Complaint in the usual form upon a promissory note given by defendant to one Julian bearing date January, 8, 1920, in the principal sum of $2,000, with interest at 8 per cent, plaintiff claiming as holder in due course by purchase from the payee.   The amended answer consisted of a general denial and the following affirmative defenses:

"For his further and affirmative defense, defendant alleges: That on or about the 8th day of January, A. D. 1920, one W. H. Julian, representing himself to be an authorized salesman of the Midland Packing Company of Sioux City, induced the defendant to subscribe for fifty shares of the capital stock of the said Midland Packing Company, and induced defendant to execute notes in payment therefor; that the said W. H. Julian, in order to induce defendant to subscribe for the said capital stock and execute his notes therefor, falsely and fraudulently represented to defendant that he was a licensed sales agent of the said Midland Packing Company, and was licensed by the State Security Commission of the state of South Dakota to represent the said Midland Packing Company in the sale of its capital stock, when in fact the said W. H. Julian was not an authorized salesman for the said Midland Packing Company, and was not licensed by the Security Commission of this state to act as such; that, in preparing the notes that defendant was asked to give to the Midland Packing Company in payment for the stock so subscribed, the said W. H. Julian prepared one note made payable to himself, and induced the defendant to sign the same without informing defendant that the same was drawn payable to said Julian and not to the said Midland

Packing Company, and defendant was by the cunning of said Julian, and by his false representations, made to sign a note payable to the said W. H. Julian without his knowledge or intent to do so.

"Defendant further alleges, for his affirmative defense: (2) That defendant received no consideration from the said W. H. Julian, or from any one acting for on in behalf of said Julian, or any one else, for the note or notes delivered to the said W. H. Julian on the 8th day of January, 1920.

"Defendant further alleges for his affirmative defense. (3) That the consideration for the notes given by defendant to the said W. H. Julian on the 8th day of January, 1920, whether said notes were payable to the said Julian or otherwise, failed in that defendant was to receive $5,000 of the par value of the capital stock of the Midland Packing Company therefor, but no such stock was ever issued to defendant or to any one in his behalf."

The case was tried to a jury; plaintiff's motion for a directed verdict at the close of all the testimony was denied; a general verdict rendered in favor of the defendant; and judgment entered thereon, from which judgment and from an order denying its motion for a new trial the plaintiff now appeals.

No exceptions were taken to the instructions of the court, and the appeal raises only the question of the sufficiency of the evidence. To justify a verdict for the respondent the jury must have found that respondent had a defense to the note as against the original payee, Julian, and must further have found that appellant was not a holder of the instrument in due course, and appellant now challenges the sufficiency of the evidence in both these respects. If appellant's position is sound as to either, the verdict cannot stand.

[1-3] An examination of the testimony raises some question in our minds as to whether respondent sufficiently established, as to the particular note in question, a defense as against the payee. But ,assuming that such defense was sufficiently established as against the payee, Julian, who transferred the note to appellant, whereby the burden was placed on appellant to prove that it acquired title as a holder in due course (section 1763, Code 1919), we are of the opinion that the evidence was insufficient to support any verdict for the respondent, of which verdict a finding that

appellant was not a holder in due course was and is an essential component.

Respondent claims that he gave this note and another of the same date to the payee, Julian, for certain shares of stock in the Midland Packing Company to be thereafter delivered, and that he supposed Julian was an authorized stock-selling agent of that corporation and that "I didn't see exactly who they were made payable to. It is my recollection that they were made payable to the Midland Packing Company."

He states, however, that he read the note, and knew it was a note for $2,000, but failed to observe that it was made payable to Julian. The undisputed evidence shows that at the time in question Julian did not in fact have a license from the Securities Commission of the state of South Dakota to sell stock for the Midland Packing Company, and that respondent never received any such stock, although he never made any demand for the same. It further appears that, within a day or two after the note was delivered to Julian, he presented it to appellant bank, and desired to sell it. Thereupon the cashier of the bank, one Geo. Gunnison, stated that before discounting the note he would like to see the maker, the respondent Zemlicka, and ask him if it would be all right to discount the note, following which Julian inquired if it would be sufficient if he himself went to Zemlicka and secured a writing to that effect, and Mr. Gunnison said that would be all right. Thereafter the payee, Julian, returned to Zemlicka, a day or two after the execution and delivery of the note, and secured his signature to a paper reading as follows:

"Geo. Gunnison: This authorizes you to purchase my note of $2,000 given to W. H. Julian if you desire.

"Henry J. Zemlicka."

With reference to the execution of this paper respondent testified that he remembered "sending a note to Mr. Gunnison"; that he had been a customer of appellant bank for a good many years, and very friendly relations existed between himself and Gunnison, that some of his relatives were interested in the bank; and that so far as he knew the officers of the bank were very friendly toward him; that Julian read this paper over to him; and thereupon he signed his name to it; and that he did not know whether or not Gunnison would be apt to act on the statement so signed by

him.   Some few days later Julian returned to appellant bank with
the note and the statement so signed by respondent, whereupon
the bank discounted the note, paying to Julian $2,000 in cash for
the same.   Appellant bank never bought any other notes from
Julian.   There is not the slightest showing that appellant bank
or any of its officers at the time of discounting this note had any
knowledge or any suspicion that the Midland Packing Company
was not perfectly sound, or that respondent would not receive
stock for his notes, or that such stock would not be worth what
respondent was promising to pay for it.   Gunnison testified that
at the time of purchasing this note he had been acquainted with
Julian since some time in the previous September, and knew that
he had been selling ,or offering for sale, stock of the Midland
Packing Company in that vicinity, and knew, or supposed, that
the note in question had been secured for such stock, and that
Julian had exhibited to him what purported to be a license from
the State Security Commission to sell stock of the Midland Pack-
ing Company, and that he himself had purchased $5,000 worth of
said stock, and had paid some cash on the purchase price, and
executed a note for the balance.   It is undisputed that respondent
had a conversation with the banker Gunnison prior to the time
he delivered the note in suit to Julian, and prior to the making
of any deal with Julian for Midland Packing Company stock.   Re-
spondent says that he talked with Gunnison at the suggestion of
Julian, while Gunnison says he does not remember whether or not
respondent stated to him that Julian suggested that the inquiries·
should be made.   In any event, a conversation did occur between
respondent and Gunnison shortly prior to the execution of the
note in question.   Gunnison's version of the talk is substantially
as follows:

"I had a conversation with defendant relative to the purchase
of the Midland Packing Company stock prior to the time the bank
bought this note from Mr. Julian.   I do not know exactly when
it was.   I remember of him asking me about the Midland Pack-
ing Company stock.   I told him that as far as I knew the stock
was all right, but that I knew nothing about it except what Mr.
Julian represented to me.   I think I told him I had bought some
stock.   I might have told him I bought $5,000 worth, because that
is what I actually bought.   The conversation took place in the

office of the bank. Mr. Zemlicka approached me and asked me if I considered the purchase of the Midland Packing Company stock good, and I told him I knew nothing about the stock except what Mr. Julian had told me; that while it looked as though it might be a good investment I advised him not to buy. The reason that I gave him that advice was because I didn't think he was financially able to handle any stock. It was not based on any suspicion I had of the stock at that time. I did not tell him I had bought $10,000 worth of the stock, and I did not tell him that Gooder (vice president of the bank) had bought $10,000 worth of stock, and I did not tell him that Donahue had bought $5,000 worth of stock."

Respondent's version of the conversation in question is substantially as follows:

"I talked with Mr. Gunnison first, and then subscribed for the stock. I asked Mr. Gunnison what he thought of the Midland Packing Company stock, and he told me he thought it was all right. He said he thought it was, otherwise he wouldn't have taken out any stock. I asked him if he knew Julian, and he said that he did, and he told me that he had taken $10,000 worth of stock. He also said Mr. Gooder, vice president of the bank, had taken stock for $10,000 in amount, and that Mr. Dunlevy had taken some. I saw Mr. Julian after that, and I subscribed for $5,000 worth."

This testimony was given by respondent after Gunnison had testified concerning the same matter, and it is to be observed that respondent does not deny that Gunnison qualified his statement that he thought the stock was all right by stating also that his knowledge on the subject was limited to what Julian had told him. Neither does it appear that such statement was false, or that Gunnison thought or had any reason to think anything else but that the stock was all right. Neither does respondent deny the claim of Gunnison that, regardless of his opinion of the value of the stock, he (Gunnison) advised respondent not to buy any because he thought he was not able to handle it. Gunnison denies having made any statement to respondent as to any purchase by Gooder or other persons, but there is an utter lack of proof that such statement, if made as claimed by respondent, was false. Taking the view of the evidence most favorable to respondent,

there is but one false statement that can possibly be claimed to have been made, namely, that, whereas Gunnison in fact had subscribed for $5,000 worth of stock he stated to respondent that he had subscribed for $10,000. Is this sufficient to justify a finding that appellant bank was not a purchaser of the note in question in due course? We think not.

Since the adoption of the Negotiable Instruments Law in this state, the so-called "majority rule" is in force that the right of a holder cannot be defeated without proof of actual notice of defects in title or bad faith, and a holder is not "bound at his peril to be on the alert for circumstances which might possibly excite the suspicion of wary vigilance." See section 1760, Rev. Code 1919; Oschenreiter v. Block, 42 S. D. 154, 173 N. W. 736; Gold Bros. Security Co., v. Fidelity Trust Co., 47 S. D. 31, 195 N. W. 830.

Furthermore, in this case, when respondent signed the statement to Gunnison authorizing the bank to purchase the note in question a day or so after he had executed the note, his own testimony very plainly shows that he knew what he was signing, and that he knew or expected such statement would be presented to appellant bank as an inducement to discount the note, and he could have had no possible object in signing the statement, except thereby to assure appellant bank that the note, his absolute promise to pay, was good, and that he claimed no defenses against the same, knowing that it was about to be negotiated. Certainly appellant was thereby relieved from the necessity of making any further investigation, if any such duty had previously existed, and respondent cannot now be heard to set up defenses to the note which he discovered after appellant had made said purchase in good faith and in reliance upon his assurances.

Under the facts and circumstances of this case we are compelled to hold that it affirmatively appears that appellant was a holder of the instrument in question in due course, and the evidence is entirely insufficient to support a verdict finding otherwise. The court erred in denying appellant's motion for directed verdict at the close of all the testimony, and the judgment and order appealed from are reversed, and the cause remanded, with instructions to enter judgment therein in favor of the appellant for the full amount of said note, with interest and costs as prayed in the complaint.

Note.—Reported in 207 N. W. 69.  See, Headnote (1), Ameri-
can Key-Numbered Digest, Bills and notes, Key-No. 497(2), 8 C. J.
Sec. 1292;  (2) Bills and notes, Key-No. 337, 8 C. J. Sec. 710;  (3)
Bills and notes, Key-No. 525, 8 C. J. Sec. 1358.
On Rev. Code 1919, Sec. 1760, see annotations 5 U. L. A., Sec.
56, page 235.