LIVESTOCK NATIONAL BANK OF SIOUX CITY, IOWA, Appellant, v. MINNEHAHA STATE BANK OF GARRETSON, et al, Respondents.

(217 N. W. 180.)

(File No. 6295. Opinion filed December 20, 1927.)

*Boyce, Warren & Fairbank,* of Sioux Falls, for Appellant.
*Danforth & Barron,* of Sioux Falls, for Respondents.

SHERWOOD, J. This action is brought to recover from respondent as indorser on a certain promissory note made by Chas. W. Peterson. After issue joined the Garretson bank closed its doors and John Hirning, then superintendent of banks, was, by proper proceedings, made a party defendant. The complaint is in the usual form.

The answer alleged in substance that, if the note sued on was made by Chas. W. Peterson, it was so made while he was an active officer, namely, vice president of respondent bank; that the loan was made directly to Peterson and was a private transaction between Peterson and appellant bank, in which the respondent bank had no interest, and that the indorsement upon the note, if any was made, was made by Peterson for his own use and benefit and was an accommodation indorsement for the accommodation of Peterson, without consideration and without authority from the respondent

bank and ultra vires; that appellant had knowledge of all these facts at the time it received the note.

The case was tried to the court without a jury. The trial court found in substance that at the time of making said note Peterson was vice president of respondent bank and the officer in active charge thereof; that while in active charge of said bank he placed on the back of said note the indorsement, "Minnehaha State Bank, Chas. W. Peterson, V. Pt."; that this note was a private note of Peterson's for his benefit, and not for the benefit of the bank; that the indorsement was an accommodation indorsement without consideration and beyond the scope and power of Peterson as vice president; and, as a conclusion of law, that the respondent bank was not liable on said indorsement. On these findings judgment was entered for respondent. From this judgment and an order denying a new trial this appeal is taken.

For convenience the Live Stock National Bank will hereafter be referred to as the Iowa bank and the Minnehaha State Bank as the Garretson bank. The material facts are as follows: In December, 1919, H. C. Peterson was president, his brother, Chas. W. Peterson, was vice president, and one Berdahl was cashier of the Garretson bank. At the same time C. L. Frederickson was assistant cashier and later became cashier of the Iowa bank. On December 17, 1919, Chas. W. Peterson executed a note, dated on that day and due June 1, 1920, for the principal sum of $2,000, with interest at 8 per cent per annum. It is assumed by both parties in their briefs that this note was made payable to the Garretson bank. The record before us leaves the matter in some doubt and the note is not in the record. However, we shall assume, as both counsel have, that the note was made payable to the Garretson bank. On the 18th day of December, 1919, this note was sent to the Iowa bank by H. C. Peterson, then president of the Garretson bank, in a letter which said:

"I am taking the privilege in sending you a note of C. W. Peterson for $2,000, due June 1st, which we wish you could carry for us. This note may be taken up before maturity. I inclose a guaranty same as we usually use in this kind when we ask our correspondent banks to carry notes for us. If satisfactory, you may credit our account, and, if not, return note to us.

"Yours very truly,

"H. C. Peterson, President."

On the 19th day of the same month, the Iowa bank, through Mr. Frederickson, its then assistant cashier, acknowledged receipt of this note, and said, in part:

"This is to acknowledge receipt of yours of the 17th inclosing note of C. W. Peterson for $2,000, which we are pleased to discount and have placed to your credit as per the inclosed memorandum. If you have a property statement of Mr. Peterson on file, we would appreciate same."

Accompanying this letter was a memorandum of discount, which showed a credit given the Garretson bank for this note of $2,016.84 on the ledger of the Iowa bank, dated December 18, 1919. Referring to this same transaction, Chas. W. Peterson testifies:

"I know the Live Stock National Bank gave the Minnehaha State Bank credit for that note; I got the money in the Minnehaha State Bank, but the Minnehaha State Bank drew the checks or drafts against the Live Stock National Bank, and I got the money from Minnehaha State Bank by check. The Minnehaha State Bank, after they got the money, turned it over to me."

On the back of this first note when it was received by the Iowa bank, as it appears by their records, there was an indorsement signed by C. O. Berdahl, who was then cashier of the Garretson bank. Testifying about this indorsement at the time the note was received by the Iowa bank, Frederickson said:

"The original note was indorsed by the Minnehaha State Bank of Garretson."

Peterson, the maker, said:

"At the time I executed this note, I think an indorsement was placed thereon by me. I think it was Minnehaha State Bank by myself as vice president."

It therefore appears undisputed that this note, payable to the Garretson bank, and in its possession, was properly indorsed in blank by one of its officers having authority to indorse its paper for rediscount and sent by the president of the Garretson bank to the Iowa bank with a request that the note be carried for them. The Iowa bank received the note and letter, placed $2,016.84, the proceeds of the note, to the credit of the Garretson bank, and wrote them:

"We are pleased to discount and have placed to your credit as per inclosed memorandum."

The Garretson bank, with full knowledge of the entire transaction, checked out the $2,016.84, and have never repaid any part of it to the Iowa bank. Peterson was unable to pay his note when it became due in June, 1920, and again when it became due by extension on December 1, 1920, and at his request renewal notes signed and indorsed as before were accepted by the Iowa bank. The old notes were canceled and returned to the Garretson bank and the proceeds of the new notes credited to them as before, the Garretson bank paying interest at date of each renewal. When the notes were renewed in December, 1920, the maker sent the Iowa bank 10 shares of stock of First National Bank of Toronto and 3 shares of the Garretson bank to be held by them as collateral to his note. On April 1, 1921, when the renewal note became due, Peterson was still unable to pay, and, on April 6th, wrote the Iowa bank:

"Please find enclosed my renewal note of $2,000, also draft for interest $53.78. You have the 13 shares of bank stock as collateral. Yours truly,

"Chas. W. Peterson, V. Pt."

To this the Iowa bank replied on April 9th:

"I have yours of the 6th, inclosing renewal for your note which matured with us several days ago, and beg to advise that owing to conditions we must ask that this be reduced to some extent.

"We took your account on during a very stringent period and have accorded you an excess line of credit and feel that you should give us the benefit of a larger portion of your reserve, as we are taking money that should have been loaned to customers that we have had for the past twenty years and we are loaning it to yourselves.

"I trust that you can see the fairness of our position and will do everything within your power to help this situation."

On April 11th the Garretson bank replied to this letter, in part, as follows:

"We return to you my note of $2,000, as I cannot reduce it just at present. But we have an application for a loan on some of our land, and as soon as we get the money will take up some on the note.

"The Phoenix Mutual Life Insurance Company are making the application, but it takes time to get a loan through. Had a

letter from Mr. Blackman of Sioux Falls a few days ago, and he said that he expected to get the loan closed in the near future. Hoping that this will be satisfactory, we remain

"Yours truly,
"Chas. W. Peterson, V. Pt."

On April 28th the Iowa bank answered:

"As evidenced by the inclosed memorandum, we are charging your account $2,000 and returning the note of Chas. W. Peterson which was due on the 1st. I am also inclosing discount memorandum for new note of like maker and amount received in yours of recent date."

So far as the record discloses, this note was in substance the same in form as the previous renewals. It was signed by the same maker and indorsed with the name of the Garretson bank, by "Chas. W. Peterson, V. Pt.," but for some reason not appearing in the record it was made payable to the "Live Stock National Bank," instead of Minnehaha State Bank of Garretson as theretofore.

At the trial respondent over proper objections introduced testimony tending to show Chas. W. Peterson received the entire proceeds of the note from the Garretson bank and used them for himself, and not for the Garretson bank; that there was no record of any of these notes given by Chas. W. Peterson in the books of the Garretson bank and no record in the minute book of the Garretson bank that its board of directors had ever authorized its vice president to borrow money from the bank; and further offered certified copies of two reports made by Rugg, then assistant cashier of the Iowa bank, to John Hirning, superintendent of banks of the state of South Dakota, one dated September 3, 1920, and one dated June 3, 1921, in which Hirning asked the Iowa bank to send him an abstract of the account of the Garretson bank with the Iowa bank between certain dates in 1920, showing bills receivable from the Garretson bank and any loans outstanding in the Iowa bank for which the Garretson bank was liable; and another similar statement as to dates in June, 1921. In reply to each of these statements the Iowa bank gave a list of collateral notes held by them to secure a loan of $10,000 due them from the Garretson Bank, not mentioning in either list any note of Chas. W. Peterson

and stating they held no other loan on which the Garretson bank was liable.

This action was brought on the note last described, which note was dated April 1, 1921, and due July 1, 1921. On this record it is appellant's contention that the note in suit is purely a renewal note; that the Garretson bank indorsed this original note and sold it to the Iowa bank, receiving full value therefor; that the note must be considered as a renewal note and its status determined as of the date it was purchased by the Iowa bank.

It is respondent's contention that the note in issue is a separate and distinct contract having no relation or association with any transaction between the parties; that the note in suit in the light of all surrounding facts became such an instrument that the indorsement on the back made respondent only an accommodation indorser.

■ ■ We think the clear preponderance of the evidence shows the note in suit was a renewal note. It was renewed each time at the request of respondent or one of its officers. The proceeds of the note in the first instance were credited by the Iowa bank to the Garretson bank. They were checked out by the Garretson bank and received by by that bank from the Iowa bank. At each subsequent renewal the credits of the renewal were given to the Garretson bank exactly as at first and the canceled notes were returned to that bank. All the correspondence concerning renewals was carried on between the banks as such. The letters in each instance were directed to the bank or some designated officer of the bank and were signed officially by the officer of the sending bank. It is manifest from the correspondence that the note was renewed only because it could not be collected and to keep live paper in the Iowa bank. Inserting the name of the Iowa bank in this renewal in no way changed the debt evidenced by the note. It did not change the legal rights or obligations of any of the parties to the note. Inserting the name of a new payee in a renewal note does not change its character as a renewal note.

It seems too clear for argument that the Iowa bank was not seeking to make new loans during that period of financial stringency. It seems still more clear that they would not make a new loan to Chas. W. Peterson, knowing he had been unable to pay his debt to them for nearly two years and was then unable to re-

duce it even in the least amount. We also think little weight should be given to the insertion of the name of the Iowa bank as payee in the last note or to the failure of the Iowa bank to mention the Peterson note in its reports made to the superintendent of banks of this state. The Peterson note was not up as collateral with the Iowa bank. It was a note they claimed to own and appeared in a different place in their records from their collateral notes and might easily have been overlooked. The report the Iowa bank was making was not one the law required them to make. It was merely made as a courtesy to the superintendent of banks of South Dakota. We therefore hold the note in suit was a renewal note, and, being such, it merely re-established and reaffirmed the original indebtedness.

It is said in 8 C. J. 626:

"Renewal, as applied to a note, means the re-establishment of the particular contract for another period of time. There may be a change of parties or an increase of security, but there is no renewal unless the obligation is the same. A renewal, as distinguished from a mere extension, is usually evidenced by a new note or other instrument."

And in 8 C. J. 656:

"The renewal does not extinguish the original debt, nor in any way change the debt except by postponing the time for payment; and as a general rule the holder is entitled to the same rights and remedies as if he were proceeding on the original note."

See, also, 8 C. J. 352, 649.

At the close of the trial appellant requested the court to make findings of fact and conclusions of law on all the issues presented by the evidence, and especially to make such findings upon the issues of sale and renewal of said note and partial payment thereon, and seasonably presented such findings to the trial court. The trial court declined to find on any of these issues. Such refusal is assigned as error. We think appellant was entitled to findings on each of these issues. For these errors and the errors of the court in the findings it made, the judgment must be reversed.

There are several other assignments of error in the record which will be important in the event of a new trial. We will now consider these.

 Our attention is called to section 8982, R. C. 1919, which, in so far as it relates to this case, reads as follows:

"No * * * active officer * * * of any corporation transacting a banking business in this state shall be permitted to borrow any of the funds of the bank upon his own note or obligation, without having first obtained the approval of all the members of the board of directors of the bank to each specific loan, and the approval, if obtained, shall be properly recorded in the bank's minute book."

It is conceded in this record that, at the time the original transaction concerning this note was had, Chas. W. Peterson was vice president and an active officer of the Garretson bank and that such fact was known to the Iowa bank. Over proper objections respondent was permitted to offer evidence tending to show that, when Peterson made the original note, and the bank indorsed and transferred it to appellant, no approval of the board of directors of the Garretson bank, or any of them, had been made to the making of this specific loan, and that no record of any such approval appears in the minutes of the bank.

It will be observed that the statute above quoted does not make such a note void, nor does it prohibit a corporation from loaning to one of its active officers; it only requires that all the members of the board of directors shall approve each specific loan and such approval shall be recorded in the bank's minute book.

This being the law, was it the duty of the Iowa bank, knowing the note offered to them was made by the vice president of the Garretson bank, to make investigation and ascertain if the board of directors had authorized the loan to its vice president and also made such authorization a record in the minute book of the bank before discounting the original note? We think there was no such duty imposed upon the officers of the Iowa bank. Our statute provides:

"To constitute notice of an infirmity in the instrument or defect in the title of the person negotiating the same, the person to whom it is negotiated must have had actual knowledge of the infirmity or defect, or knowledge of such facts that his action in taking the instrument amounted to bad faith." Section 1760, R. C. 1919.

The original note was sent to the Iowa bank by the president of the Garretson bank, and, when received, bore an indorsement

signed by the cashier of that bank. No fraud or collusion is charged between the banks, or any of their officers. The note was sent and received in the usual course of business. The receiving bank was located in a city distant from the sending bank. Actual knowledge by the Iowa bank that the note was signed by the vice president and that he was at that time an active officer of the sending bank was not the knowledge of such facts that their action in taking the note amounted to bad faith. Section 1760, R. C., supra; 8 C. J. p. 501; Grant McPherrin v. J. M. Tittle, 36 Okl. 510, 129 P. 721, 44 L. R. A. (N. S.) 395, and see notes 2 and 3 same case; Farmers' & Merchants' Bank of Wellsburg v. Nissen, 46 S. D. 121, 190 N. W. 1014; Gold Bros. Security Co. v. Fidelity Trust Co., 47 S. D. 31, 195 N. W. 830; Citizens' Trust & Savings Bank v. Empey, 34 S. D. 361, 148 N. W. 606; Orient State Bank v. Zemlicka, 49 S. D. 277, 207 N. W. 69; Commercial State Bank v. Iverson, 49 S. D. 466, 207 N. W. 471.

Banks receiving such notes for rediscount have a right to rely upon the honesty, good faith, and fair dealing of the transmitting banks. We have considered State Bank of Florence v. Lyon County Nat. Bank (Minn.), 212 N. W. 177. The rule there announced is not applicable to the facts of this case.

It follows from what has been said that the Iowa bank was not required to follow the proceeds of this note after it reached the Garretson bank, and it was not material to this case what was done with such proceeds, nor who received the same, nor what the records of the Garretson bank showed concerning the Peterson notes.

The judgment and order of the court denying new trial are reversed, and the case is remanded for further proceedings in conformity with this opinion.

CAMPBELL, P. J., concurs in result.

GATES, and POLLEY, JJ., concur.

BURCH, J., not sitting.