COMMERCIAL CREDIT CO., Appellant, v. NISSEN,
Respondent.

(231 N. W. 534.)

(File No. 6652.   Opinion filed June 24, 1930.)

*Corrigan & Walton,* of Aberdeen, for Appellant.

*Williamson, Smith & Williamson,* of Aberdeen, for Respondent.

BROWN, P. J.   In this action on five negotiable promissory notes for $1,072 each, defendant pleaded want of consideration as a defense. The case has appeared in our reports on three former occasions.   43 S. D. 564, 181 N. W. 99; 49 S. D. 303, 207 N. W. 61, 51 A. L. R. 287; and 51 S. D. 357, 213 N. W. 943, 51 A. L. R. 287.   On the last occasion it was remanded to the trial court to determine "when plaintiff paid the seventy-five per cent of the purchase price and when knowledge of defendant's defense came to plaintiff."

On Dcember 15, 1917, defendant, then in business in Aberdeen, S. D., made a contract with Interstate Tractor Company of Waterloo, Iowa, for the purchase of fifty tractors to be shipped to him during the months of January, February, and March, 1918. For the purchase price he executed to the tractor company fifty notes for $1,072 each, some due in six month and some in six and one-half months.   The five notes involved in this suit are part of the fifty.   The tractor company agreed not to negotiate any note until it had shipped a tractor therefor; defendant got no tractor for any of the notes in suit.   Since the notes were therefore negotiated in breach of faith, the burden is on plaintiff to prove that it acquired title to them as a holder in due course.   Rev. Code 1919, §§ 1759, 1763.   The following is a summary of the evidence on that point:   Plaintiff is a corporation engaged in the business of dealing in commercial paper, largely in the purchase of notes and other evidence of indebtedness from manufacturers and jobbers. Its principal place of business is at Baltimore, Md.   In April, 1918, Alexander E. Duncan, one of its officers, in response to a

request of the tractor company that plaintiff consider the purchase of some notes of customers of the tractor company, went to Waterloo, Iowa, and there arranged to purchase from Interstates Tractor Company notes of their customers aggregating about $100,000. Under the arrangement notes were to be sent to plaintiff at Baltimore from time to time with sight draft attached for 75 per cent of the amount of notes transmitted. The drafts were to be paid on presentation, and the remaining 25 per cent of the purchase price of the notes was to be paid when the notes were collected from the makers. Notes to the amount of $20,000 with draft for $15,000 were received by plaintiff on April 26, 1918, and the draft was paid. On April 29, 1918, the five notes in suit were received with draft for $4,020 attached. This draft was paid, and shortly thereafter on the same day plaintiff received from the tractor company an additional lot of defendant's notes with drafts attached. W. L. Batchelor, assistant secretary of plaintiff, testified that his duties were the purchase of open account, and notes for plaintiff, that he handled the transaction of receiving and paying for the five notes in suit, and that the additional lot received the same day amounted to $20,000. Duncan's testimony was to the effect that the additional lot offered was $15,000. This additional lot was not accepted, but was held by plaintiff pending a reply to a letter written by Duncan on behalf of plaintiff, which stated in substance that the plaintiff was arranging to buy from Interstate Tractor Company some $20,000 of notes given the tractor company by defendant, and requested that plaintiff be informed if each of these notes represented an actual purchase and delivery of tractors, and was not accommodation paper or paper advanced for tractors to be delivered at a later date. Defendant replied that tractors for these notes had not yet been delivered, and suggested that plaintiff should not buy the notes. On receiving this reply, plaintiff returned the additional lot of notes, and transacted no further business with the tractor company.

McNally, the secretary of the tractor company, testified that the five notes in suit with draft attached were transmitted from Waterloo to plaintiff on April 25th, and identified the paid sight draft of that date, drawn on defendant to the order of First National Bank of Waterloo, Iowa, for $4,020, and testified that the draft was paid by the Commercial Credit Company in the ordinary

and usual course of business; that the Interstate Tractor Company was given credit therefor on the date when it was drawn, April 25, 1918, in the First National Bank of Waterloo, and later checked it out in the ordinary course of business. The testimony of these witnesses, Duncan, Batchelor, and McNally, was undisputed, and plaintiff's motion for a directed verdict should have been sustained, unless there were circumstances to justify the inference by reasonable minds that the testimony of Duncan and Batchelor, they being officers of the company, and to that extent interested witnesses, was untrue. The only circumstance is the fact that on receiving the additional lot of Nissen paper on the same day, and after payment for the notes in suit, the officers of the company wrote to Nissen inquiring if the additional lot of notes were given for tractors that had been delivered. Respondent's counsel asks why, if the plaintiff was willing to purchase the notes in suit under the general credit investigation made by Duncan when at Waterloo, it should experience a change of heart and policy on receiving the additional lot of notes, and why the inquiry should be as to the particular defense set up, viz., whether tractors had been delivered for all notes rather than to a general inquiry as to whether any defenses existed against the notes. The reason given by the two officers for making this inquiry on receiving the additional lot of paper was that it was an unusual amount for them to purchase against one party, and that they wrote Nissen as an extra precaution before deciding whether of not they would take the additional lot. They knew that the sale of tractors was the business of the tractor company, and we see nothing suspicious or indicative of knowledge or notice of infirmity in the paper in the inquiry. The fact that, when this additional lot of paper was presented to appellant, it wrote to Nissen to make inquiry about the matter, in itself indicates that appellant was not either fraudulently or recklessly buying paper with the intention or design of setting up a fictitious claim of being a bona fide purchaser. Had appellant been transacting business from that point of view, it would naturally have taken the $20,000 of paper as it had taken the $5,000 worth without making any inquiry at all, because, in order to be a holder in due course, it was not under obligation to make any inquiry, Oschenreiter v. Block, 42 S. D. 154, 173 N. W. 736, Gold Brothers Security Company v. Fidelity Trust Co., 47 S. D. 31, 195 N. W. 830, Orient State Bank v. Zemlicka,

49 S. D. 277, 207 N. W. 69, and, if the officers of plaintiff had knowledge or notice of any infirmity in the paper before paying for the notes in suit, it is almost unbelievable that they would pay for these notes and then write the inquiry on receiving the additional lot.

In Jerke v. Delmont State Bank, 54 S. D. 446, 223 N. W. 585, 594, in an exhaustive opinion by Judge Campbell on the question of the duty of a trial court to direct a verdict on undisputed testimony given by interested witnesses, it is said: "If the testimony in behalf of the party having the burden of proof is clear and full, not extraordinary or incredible in the light of general evperience, and not contradicted, either directly or indirectly, by other witnesses or by circumstances disclosed, and is so plain and complete that disbelief therein could not arise by rational processes applied to the evidence, but would be whimsical or arbitrary, then, and in such case, it is not only permissible, but highly proper, to direct a verdict, and the direction of such verdict should not be prevented merely by reason of the fact that one or more of the witnesses are interested in the transaction or the result of the suit."

This rule is followed in National Bank of Commerce v. Bottolfson, 55 S. D. 196, 225 N. W. 385, and First National Bank v. Thompson, 55 S. D. 629, 227 N. W. 80, 81. Applying this rule to the facts in the present case, we think the court should have sustained plaintiff's motion for a directed verdict at the close of all the evidence.

The judgment and order denying a new trial are reversed.

POLLEY, SHERWOOD, and BURCH, JJ., concur.

CAMPBELL, J., disqualified and not sitting.

MISER, C., sitting in lieu of CAMPBELL, J., concurs.